| | | | |
|---|---|---|---|
| Case No. | **EDCV 17-02489 JGB (KKx)** | Date | March 21, 2018 |
| Title | *Carlos Moreno v. JCT Logistics, Inc. et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING Plaintiff's Motion to Remand to San Bernardino County Superior Court (Dkt. No. 20); and (2) DENYING Defendants' Motion to Transfer (Dkt. No. 21)

    Two motions are before the Court. On January 12, 2018, Plaintiff Carlos Moreno ("Plaintiff,") filed a Motion to Remand Case to San Bernardino Superior Court. ("Motion to Remand," Dkt. No. 20.) Defendants John Christner Trucking, LLC and John Christner Trucking, Inc. (collectively, "Defendants") filed an opposition on February 12, 2018. ("Defendants' Opposition," Dkt. No. 22.) Plaintiff filed a reply on February 20, 2018. ("Plaintiff's Reply," Dkt. No. 25.) Additionally, Defendants filed a Motion to Transfer Case to the Northern District of Oklahoma. ("Motion to Transfer," Dkt. No. 21.) Plaintiff filed an opposition on February 12, 2018. ("Plaintiff's Opposition," Dkt. No. 23.) Defendants filed a reply on February 16, 2018. ("Defendants' Reply," Dkt. No. 24.) The Court held a hearing on this matter on March 5, 2018. Upon consideration of the papers filed in support of and in opposition to these motions, as well as the oral argument by the parties, the Court DENIES Plaintiff's Motion to Remand and DENIES Defendants' Motion to Transfer.

## I. BACKGROUND

    On July 14, 2017, Plaintiff filed an amended class action complaint against Defendants in the Superior Court of the State of California County of San Bernardino. ("FAC," Dkt. No. 3-1.) Plaintiff's case centers on alleged wage and labor violations arising out of Defendants' alleged misclassification of its truck drivers as independent contractors. (Id. ¶ 1.) In his FAC, Plaintiff alleged seven causes of action: (1) failure to provide meal periods; (2) failure to provide rest

breaks; (3) failure to pay minimum wages; (4) failure to furnish timely and accurate wage statements; (5) failure to pay all wages owed every pay period; (6) failure to reimburse business expenses; and (7) violation of California's Unfair Competition Act ("UCL"). (See generally, id.) Plaintiff seeks to represent the following Class: All current or former drivers for Defendants, who were California residents and were classified as "independent contractors," at any time beginning four (4) years prior to the filing of the Complaint through the date notice is mailed to the Class (the "Class Period"). (Id. ¶ 2.) Defendants removed to this Court on December 13, 2017. ("Notice," Dkt. No. 3.)

## II. PLAINTIFF'S MOTION TO REMAND

### A. Legal Standard

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute." Gunn v. Minton, 568 U.S. 251, 257 (2013). The Class Action Fairness Act ("CAFA") vests federal courts with original jurisdiction over class actions involving at least 100 class members, minimal diversity, and an amount in controversy that exceeds $5,000,000. 28 U.S.C. § 1332(d).

Generally, courts must "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "However, 'no anti-removal presumption attends cases invoking CAFA.'" Garcia v. Wal–Mart Stores, Inc., No. CV 16–01645–BRO (RAO), 2016 WL 6068104, at *3 (C.D. Cal. Oct. 14, 2016) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014)). Instead, Congress intended CAFA to be interpreted expansively. Ibarra v. Manheim Investments, Inc., 775 F. 3d 1193, 1197 (9th Cir. 2015).

A defendant seeking removal of an action to federal district court need only offer a "short and plain statement of the grounds for removal" in its notice of removal. 28 U.S.C § 1446(a). To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices." Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1021 (9th Cir. 2007) (citations omitted).

To satisfy CAFA's amount-in-controversy requirement, "a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000." Garcia 2016 WL 6068104, at *3 (citing Ibarra, 775 F. 3d at 1197). A removing "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." Dart, 135 S. Ct. at 553. Where a plaintiff questions the amount in controversy asserted, further evidence establishing that the amount alleged meets the jurisdictional minimum is required. Id. at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Ibarra, 775 F.3d at 1197 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

**B. Discussion**

Plaintiff makes two arguments in his Motion to Remand. First, Plaintiff argues Defendants failed to meet their evidentiary burden regarding the amount in controversy. (Motion to Remand at 4.) Second, Plaintiff argues Defendants untimely removed this action to federal court. (Id. at 7.) The Court will review each argument, starting with the issue of timeliness.

   1. **Timeliness**

Plaintiff notes Defendants failed to remove this case within thirty days of being served with the FAC. (Id. at 7.) Defendants must file for removal within thirty days of receiving a copy of the initial pleading upon which the removal is based. See 28 U.S.C. § 1446(b)(1). Plaintiff cites authority which states that a "pleading need not identify a specific amount in controversy in order to trigger the thirty-day removal period . . . [t]he time for removal commences when a defendant is able to intelligently ascertain it exceeds the jurisdictional minimum." (Motion to Remand at 7 (citing Jones v. CLP Resources, Inc., 2016 WL 8950063, *5 (C.D. Cal. 2016) (internal quotations omitted).) Plaintiff states Defendants knew or had access to all the information upon which they base their removal when the FAC was filed in July 2017, therefore, that is when the thirty-day period began running. (Id. at 8.) Additionally, Plaintiff cites authority which holds that, when the complaint is indeterminate regarding the amount in controversy, the thirty-day period begins to run if the defendant was provided sufficient information to ascertain the amount in controversy. (Plaintiff's Reply at 7–8 (citing Banta v. Am. Med. Response Inc., 2011 WL 2837642, at *7 (C.D. Cal. July 15, 2011)).)

Defendants argue Ninth Circuit precedent does not require removal within thirty days if the complaint is indeterminate with respect to removability. (Defendants' Opposition at 16–17.) Defendants state the complaint in Jones contained specific figures which could be added together to determine the amount in controversy. (Id. (citing Jones, 2016 WL 8950063, at *6).) In contrast, Defendants here argue Plaintiff's FAC contained no figures which Defendants could easily multiply or add across the class. (Defendants' Opposition at 17.) The Court agrees with Defendants. Moreover, a recent Ninth Circuit case supports Defendants' position. In Kenny v. Wal-Mart Stores, Inc., 881 F.3d 786 (9th Cir. 2018), the Ninth Circuit recently reaffirmed that defendants are not charged with notice of removability until they receive a document which provides them sufficient information to remove. Kenny, 881 F.3d at 791. Additionally, "a defendant does not have a duty of inquiry if the initial pleading or other document is indeterminate with respect to removability." Id. (quoting Roth v. CHA Hollywood Med. Ctr.,

L.P., 720 F.3d 1121, 1125 (9th Cir. 2013)). "Accordingly, even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." Id. (quoting Roth, 720 F.3d at 1125). This reasoning appears to apply even when the "FAC is indeterminate as to the amount in controversy." Id. at 790. In Roth, the Ninth Circuit considered whether this rule might lead to gamesmanship by defendants in CAFA cases, and stated that "plaintiffs are in a position to protect themselves. If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained." Roth, 720 F.3d at 1126. Under Kenny, Defendants have not run afoul of their 30-day window and, as a consequence, timely removed this case. Accordingly, the Court rejects Plaintiff's timeliness argument.

### 2. The Amount in Controversy

Plaintiff also argues Defendants failed to meet their evidentiary burden regarding the amount in controversy. (Motion to Remand at 4.) Defendants bear the burden of establishing the amount in controversy exceeds $5,000,000. Ibarra, 775 F.3d at 1197.

#### a. Waiting Time

Plaintiff seeks to represent the following Class: All current or former drivers for Defendants, who were California residents and were classified as "independent contractors," at any time beginning four (4) years prior to the filing of the Complaint through the date notice is mailed to the Class (the "Class Period"). (FAC ¶ 2.) Defendants state they entered into Broker/Carrier Agreements with 1,419 individuals and businesses ("Contract Carriers") who were classified as independent contractors and had California addresses between July 6, 2013, and November 15, 2017. (Defendants' Opposition at 4.) November 15, 2017 was the date Defendants' information was collected for the Notice of Removal. (Id.) For purposes of determining who, among those Contract Carriers, might be considered terminated in connection with Plaintiff's fifth cause of action, Defendants considered anyone who had executed a Broker/Carrier Agreement but who did not receive a settlement statement after June 1, 2017, which was 35 days before the filing of Plaintiff's FAC. (Id.) Defendants' records show there were 820 former Contract Carriers who may be eligible for Plaintiff's class action. (Id.)

Defendants claim Plaintiff transported their products for sixty of the seventy days between May 11, 2017 and July 20, 2017. (Defendants' Opposition at 3; "Crowley Declaration," Dkt. No. 22-1 ¶¶ 12, 14, 15.) During that time, Defendants paid Plaintiff a total of $31,843.50 in what Defendants characterize as "net revenue." (Defendants' Opposition at 3; Crowley Declaration ¶¶ 10, 11.) Defendants calculated this net revenue by deducting $236.50 in fees from Plaintiff's gross revenue of $32,080. (Defendants' Opposition at 3.) Defendants then divided the net revenue by sixty, and determined that Plaintiff was paid a daily rate of $530.72. (Id. at 10.) This led Defendants to conclude Plaintiff was paid an hourly wage of $66.34 based on an 8-

hour day, or $33.17 based on a 16-hour day. (Id.) Plaintiff disputes Defendants' calculation of his net revenue, arguing Defendants failed to reduce the gross amount by other business expenses such as "taxes, insurance, and fuel." (Plaintiff's Reply at 3.) Defendants admit their figure may be inaccurate, noting that they "cannot account for or estimate the total amount of Plaintiff's business expenses at issue to the extent they were not deducted from [Plaintiff's] settlement statements." (Defendants' Opposition at 7.) But at oral argument, Plaintiff was unable to specify what further deductions Defendants should have made. Defendants anticipated there might be issues with their hourly wage figure of $66.34, and therefore provided reasonable calculations demonstrating the amount in controversy exceeds $5,000,000 even when they assume Plaintiff made only minimum wage. Thus, Defendants performed this calculation: $9.50 x 8hrs/day x 30 days x 820 Former Carriers = $1,869,600.00. The Court finds this calculation reasonable. Accordingly, Defendants have appropriately established there is $1,869,600.00 in controversy for this claim.

### b. Minimum Wage

Plaintiff seeks compensation for Defendants' failure to pay Plaintiff a minimum wage during inspections and other on-duty time. (FAC ¶ 53.) Defendants calculated this amount as $158,213.00. (Defendants' Opposition at 11.) To determine that number, Defendants estimated the class members took about half an hour per week to do a proper inspection. (Id. (citing Notice at 6–7).) Defendants then performed this calculation: $9.50 (minimum wage) x 0.5 (half an hour) x 16,654 (weeks) = $79,106.50 x 2 (liquidated damages) = $158,213.00. (Id.) The Court accepts this calculation as reasonable. Accordingly, Defendants have appropriately established there is $158,213.00 in controversy for this claim.

### c. Wage Statement

Plaintiff seeks compensation for Defendants' failure to furnish timely and accurate wage statements. (FAC ¶¶ 60–66.) Defendant has presented evidence that there were 4,975 settlement statements that could be considered in determining the amount at issue under this claim. (Defendants' Opposition at 12; Crowley Declaration ¶ 20.) Defendants state there is a $50 penalty for the first alleged violation, then a $100 penalty for each alleged subsequent violation, with a cap of $4,000 in penalties per putative class driver. (Defendants' Opposition at 12.) Defendants reasonably interpret Plaintiff's FAC as alleging a violation for each and every wage statement provided to Plaintiff and the class. (Notice at 7.) As a result, Defendants state Plaintiffs appear to seek $464,350 in penalties for their wage statement claims. (Defendants' Opposition at 12.) This calculation appears reasonable to the Court. Thus, Defendants have adequately established there is $464,350.00 in controversy regarding this claim.

### d. Meal and Rest Breaks

Plaintiff seeks compensation for Defendants' failure to provide meal breaks and rest breaks during the class period. (FAC ¶¶ 12, 35, 42). Plaintiff, citing Letuligasenoa v. Int'l Paper Co., 2014 WL 2115246, *6 (N.D. Cal. 2014), erroneously states Defendants are only allowed to

calculate compensation for meal periods or rest periods, but not both. (Plaintiff's Reply at 5.) However, the law clearly allows for compensation of both meal and rest periods. See Al-Najjar v. Kindred Healthcare Operating, Inc., 2017 WL 4862067, at *4 (C.D. Cal. Oct. 26, 2017) (citing United Parcel Serv., Inc. v. Superior Court, 196 Cal. App. 4th 57, 69, (2011)). Defendants note Plaintiff alleges he was never compensated for his rest breaks. (Defendants' Opposition at 12.) Consequently, Defendants assumed there were five rest break violations per week, and 16,654 total weekly settlement statements. (Id.) Thus Defendants believe the appropriate calculation is as follows: 5 (violations per week) x $9.50 (hourly rate) x 16,654 (total weeks) = $791,265.00. (Id. at 12, 15.) This calculation appears reasonable to the Court. Thus, Defendants have adequately established there is $791,265.00 in controversy regarding this claim. Defendants performed no parallel calculation to establish an amount in controversy regarding meal break violations using the minimum wage figure.

### e. Failure to Reimburse Business Expenses

Plaintiff seeks compensation for Defendants' failure to reimburse business expenses incurred by class members in the discharge of their employment obligations. (FAC ¶ 73.) Here, Defendants submitted a declaration stating Plaintiff would be owed $2,401,433.80 in compensation. (Defendants' Opposition at 12–13; Crowley Declaration ¶ 21.) Plaintiff does not dispute these figures. Thus, Defendants have submitted sufficient evidence to establish this amount, and the Court recognizes $2,401,433.80 in controversy for this claim.

### f. Attorneys' Fees

Defendants seek to add a 25% attorneys' fees award to the total amount in controversy. (Defendants' Opposition at 15.) However, this Court takes the position that when calculating attorneys' fees to establish jurisdiction, "the only fees that can be considered are those incurred as of the date of removal." See Faulkner v. Astro-Med, Inc., 1999 U.S. Dist. WL 820198, *9 (N.D. Cal. Oct. 4, 1999), citing Miranti v. Lee, 3 F.3d 925, 928 (5th Cir. 1993); see also Conrad, 994 F. Supp. at 1200; Reames v. AB Car Rental Servs., 899 F. Supp. 2d 1012, 1020–21 (D. Or. 2012). Defendants have not provided the Court with any evidence to support their argument concerning Plaintiff's attorneys' fees up until the date of removal. Without "summary judgement-type evidence" to support their contentions, Defendants have failed to establish any amount of attorneys' fees to be included in the amount in controversy. See Ibarra, 775 F.3d at 1197.

## III. DEFENDANTS' MOTION TO TRANSFER

Defendants ask the Court to transfer this case to the Northern District of Oklahoma pursuant to a forum selection clause in the Broker/Carrier Agreement ("Agreement") Defendants signed with Plaintiff. (Motion to Transfer at 1.) Defendants signed this agreement with Brown & Cross Trucking, the company through which Plaintiff did business. (Id.) Defendant John Christner Trucking, LLC ("JCT") is an Oklahoma limited liability company headquartered in Sapulpa, Oklahoma. (Id.) JCT's officers maintain their offices in Oklahoma,

and all company records are stored in Oklahoma.  (Id. at 2.)  No member of JCT is a resident of California.  (Id.)  To deliver its customers' freight, JCT contracts with independent contractor owner-operators who operate commercial motor vehicles under JCT's federal operating authority, or it brokers the freight to independent third-party motor carriers that haul the freight under their own federal authority.  JCT entered into the Agreement with Carlos Moreno d/b/a Brown & Cross Trucking on April 26, 2017.  (Id.)  Brown & Cross Trucking is a for-hire, interstate motor carrier based in California.  (Id.)

## A. Legal Standard

A district court may transfer a civil action "to any other district or division where it might have been brought," if it is "[f]or the convenience of parties and witnesses" and "in the interests of justice."  28 U.S.C. § 1404(a)–(b).  Whether a transfer is warranted under § 1404(a) turns on a two-fold analysis.  First, the defendant must establish that the matter "might have been brought" in the district to which transfer is sought.  28 U.S.C. § 1404(a).  To do this, defendants must show that personal jurisdiction, subject matter jurisdiction, and venue would have been proper had the action been filed in the desired district.  Metz v. U.S. Life Ins. Co. in City of New York, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).  Second, the court must balance three factors: (1) convenience of the parties; (2) convenience of the witnesses; and (3) the interests of justice.  28 U.S.C. § 1404(a); Pfeiffer v. Himax Technologies, Inc., 530 F. Supp. 2d 1121, 1123 (C.D. Cal 2008).

"In analyzing the third factor, the 'interests of justice,' a number of factors may be relevant, including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  CXA Corp. v. Mazal Investments LLC, No. CV1208269JGBJEMX, 2013 WL 12191835, at *2 (C.D. Cal. Mar. 14, 2013) (internal quotations omitted) (citing Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000)).

## B. Discussion

### 1. The Forum Selection Clause

JCT relies on the following provision within its contract with Plaintiff:  "This written Agreement, together with any load confirmation, contains the entire agreement between the parties and may only be modified by signed written agreement.  Oklahoma law, venue, and jurisdiction shall apply."  ("Forum Selection Clause," Exhibit 1-A, Dkt. No. 21-1 ¶ 9.)  Defendants argue this Forum Selection Clause applies to "any disputes related to the agreement," including a dispute over whether Brown & Cross Trucking is correctly classified as an independent contractor.  (Motion to Transfer at 4–5.)  JCT cites two cases to support its position: Huddleston v. John Christner Trucking, LLC, No. 1:17-cv-00925-LJO-SAB, 2017 WL

4310348 (E.D. Cal. Sept. 28, 2017) and LaCross v. Knight Transportation, Inc., 95 F. Supp 3d 1199, 1202–03 (C.D. Cal. 2015). (Id. at 4–5.)

Plaintiff argues the Forum Selection Clause does not explicitly state whether it applies to a disagreement between the parties, let alone address the breadth of disagreements which it covers. (Plaintiff's Opposition at 2.) Plaintiff argues that, at its broadest, the Forum Selection Clause could be interpreted to mean "Oklahoma law, venue, and jurisdiction shall apply to issues under this Agreement." (Id. (internal quotations omitted).) Plaintiff notes he is not bringing any claims under the Agreement and no issues of breach of contract were alleged in the complaint. (Id. at 2–3.) Plaintiff distinguishes Huddleston and LaCross by noting that the forum selection clauses in those cases are broader than the one here. In Huddleston, the forum selection clause read as follows:

> THE PARTIES AGREE THAT *ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT*, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN LAW . . . SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING CREEK COUNTY, OKLAHOMA. CARRIER AND CONTRACTOR HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS.

Huddleston, 2017 WL 4310348, at *1 (emphasis added) (capitalization in original). In LaCross, the forum selection clause read as follows: "The parties agree that *any legal proceedings between the parties arising under, arising out of, or relating to the relationship* created by this Agreement . . . shall be filed and/or maintained in Phoenix, Arizona." LaCross, 95 F. Supp at 1202 (emphasis added).

Plaintiff argues, and the Court agrees, these forum selection clauses utilize language sufficiently broad to encompass a dispute over whether a party is appropriately classified as an independent contractor. Here, however, the Forum Selection Clause lacks language defining its scope, and therefore cannot be interpreted as equivalent to the forum selection clauses in Huddleston or LaCross. The ambiguous language in the Forum Selection Clause must be construed against JCT, the drafter of the Agreement. See Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 78 (9th Cir. 1987). Accordingly, the Court finds the Forum Selection Clause is insufficient to bind the parties to litigate this dispute in the Northern District of Oklahoma.

2. **Transfer under 28 U.S.C. § 1404(a)**

A motion to transfer brought under 28 U.S.C. § 1404(a) requires a two-step analysis. First, the defendant must establish that the matter "might have been brought" in the district to which transfer is sought. 28 U.S.C. § 1404(a). To do this, the defendant must show that personal jurisdiction, subject matter jurisdiction, and venue would have been proper had the action been filed in the desired district. Metz, 674 F. Supp. 2d at 1145. Only after the defendant has made this showing does the Court examine whether the motion to transfer is beneficial for (1) convenience of the parties, (2) convenience of the witnesses, and (3) the interests of justice. Id.

Here, JCT has not attempted to show that personal jurisdiction, subject matter jurisdiction, and venue would be proper in the Northern District of Oklahoma. JCT's Motion to Transfer is singularly concerned with whether the Court should transfer the case in order to consolidate it with Huddleston, an ongoing class action which also concerns a dispute over whether workers should be classified as independent contractors or employees. (Motion to Transfer at 6–11.) Because JCT failed to carry its burden, the Court DENIES its Motion to Transfer. However, assuming *arguendo* JCT had met this burden, its Motion to Transfer would still be denied because JCT failed to establish the transfer would be beneficial for the convenience of the parties, the convenience of the witnesses, and the interests of justice. Indeed, this transfer would only serve to shift the inconvenience onto Plaintiff. This class action law suit has an all-California class membership and will apply only California state law. The Central District of California is certainly more familiar with California wage and hour law than the Northern District of Oklahoma. JCT states that Oklahoma would be more convenient for its witnesses, but does state how many witnesses it intends to utilize. Moreover, the Huddleston case is a class action which contains a national class as well as an Oklahoma-only subclass. (Plaintiff's Opposition at 14–15.) Thus, adjudicating that dispute in Oklahoma better serves the interests of the parties.

## IV. CONCLUSION

In summary, Defendants have sufficiently established the amount in controversy for this case includes $1,869,600.00 for Plaintiff's waiting time claim, $158,213.00 for Plaintiff's minimum wage claim, $464,350.00 for Plaintiff's wage statement claim, $0 for Plaintiff's meal break claim, $791,265.00 for Plaintiff's rest break claim, $2,401,433.80 for Plaintiff's business reimbursement claim, and $0 for Plaintiff's attorneys' fees. In total, Defendants have established there is $5,684,661.80 in controversy for this litigation, which exceeds the $5,000,000 jurisdictional threshold. Accordingly, the Court DENIES Plaintiff's Motion to remand. Additionally, as indicated at oral argument, the Court DENIES Defendants' Motion to Transfer.

**IT IS SO ORDERED.**