Joshua H. Haffner, SBN 188652
jhh@haffnerlawyers.com
Graham Lambert, SBN 303056
gl@haffnerlawyers.com
Michael K. Teiman, SBN 319524
mt@haffnerlawyers.com
Haffner Law PC
445 South Figueroa Street, Suite 2325
Los Angeles, California 90071
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Attorneys for Plaintiff and all others
similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS MORENO, an individual; on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JCT LOGISTICS, INC.; and DOES 1 through 10, inclusive,<br><br>Defendant. | **Case No. 5:17-cv-02489-JGB-KK**<br><br>**(PLAINTIFF CARLOS MORENO'S OPPOSITION TO DEFENDANT JOHN CHRISTNER TRUCKING, LLC'S MOTION FOR SUMMARY JUDGMENT.**<br><br>Hearing Date: January 7, 2019<br>Hearing Time: 9:00 a.m.<br>Courtroom: 1<br><br>(Assigned to The Hon. Jesus G. Bernal) |

# TABLE OF CONTENT

I.  INTRODUCTION. .................................................................................1

II. STATEMENT   OF   FACTS   AND   PROCEDURAL
BACKGROUND. ........................................................................................2

   A.  JCT's Business Operations. ...................................................3

   B.  JCT's Relationship With Its Drivers. ...................................3

   C.  Procedural History. ................................................................3

III. ARGUMENT. .......................................................................................4

   A.  Legal Standard ......................................................................4

   B.  The FAAAA Does Not Preempt The Applicable
California State Wage And Hour Laws. ......................................5

     1.  There Is No Conflict Between California Wage And Hour
Laws And Congress's Deregulatory Intent. .................................5

     2.  California's Wage And Hour Laws Do Not Require Trucking
Companies To Use Employee Drivers. ..........................................9

     3.  Plaintiff's Claims Do Not Seek To Use California State Law
To Alter Any Contract. ..................................................................11

       a.  There Is A Genuine Dispute As To The Existence Of A
Contract Between Plaintiff And Defendant. ...............................11

       b.  California's Wage And Hour Laws Are Not Related To
Prices, Routes, Or Services, And Are Therefore Not
Preempted. .....................................................................................12

       c.  Plaintiff's Claims Do Not Seek To Change Or Undo The
Terms Of Any Agreement. ............................................................16

IV. CONCLUSION. .................................................................................18

Plaintiff Carlos Moreno's Opposition to Defendant John Christner Trucking, LLC's Motion for
Summary Judgment

1

2

# TABLE OF AUTHORITIES

3

**Cases**

4

*Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995)..........................................8, 9, 17

5

6

*Am. Trucking Assn's, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1056 (9th Cir. 2011)......................................................................10, 11

7

*Ambat v. City & County of San Francisco* 757 F3d 1017, 1031 (9th Cir. 2014)..........................................................................4

8

9

*California Trucking Association v. Su*, 903 F.3d 953, 967 (9th Cir. 2016).................................................... 1-2, 4-5, 8-12, 14-18

10

11

*Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998).......................1-2, 4-7, 9, 12-18

12

*Dans City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013)....................................18

13

*Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 967 (9th Cir. 2014) ........................................................... 1-2, 4-7, 8-9, 12-18

14

*Dynamex Operations W. v. Sup Ct.,* 4 Cal. 5th 903 (2018)....................................11

15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)..........................................................................4

16

17

*Morales v. Tans World Airlines, Inc.* 504 U.S. 374, 390..........................................5

18

*Northwest, Inc. v. Ginsberg,* 572 U.S. 273 (2014) ........................................8, 9, 17

19

*People ex rel. Harris v. Pac Anchor Transportation, Inc.,* 59 Cal.4th 772, 787 (2014) ...........................................................2, 4, 10

20

21

*Rowe v. New Hampshire Motor Transport Ass'n* 552 U.S. 364, 371 (2008)..........................................................................5

22

**Statutes**

23

49 U.S.C. § 14501(c)(1)..........................................................................5

24

Fed. R. Civ. P. 56(a)..........................................................................4

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction.

There is nothing new or novel about this case.  The Ninth Circuit has already rejected Defendant John Christner Trucking, LLC's ("Defendant" or "JCT") arguments that California's wage and hour laws are somehow preempted by the Federal Aviation Administration Authorization Act ("FAAAA").   Indeed, the Ninth Circuit evaluated this argument and soundly rebuffed it in a number of near identical cases.[1]  *See California Trucking Association v. Su*, 903 F.3d 953, 967 (9th Cir. 2016) (holding that the FAAAA does not preempt the use of the *Borello* standard to determine whether truck drivers may be employees entitled to protection under California's labor laws.); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 967 (9th Cir. 2014)  (holding that California's meal and rest break laws are not preempted by the FAAAA as they pertain to truck drivers); *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) (holding California's Prevailing Wage Law was not preempted by the FAAAA as applied to motor carriers).

Defendant mischaracterizes the issue in this case as one of state law altering a agreement involving a motor carrier in violation of the FAAAA.  In other words, Defendant claims that Plaintiff's wage-and-hour claims seek to change the price a motor carrier agreed to charge its customers to deliver freight.  However, Defendant conveniently ignores that it is well established that there is no FAAAA preemption of California's traditional labor protection powers, which may affect carriers' rates, routes, or services in only tenuous ways.  *Su*, 903 F.3d at 961; *Dilts*, 769 F.3d at

---

[1] Plaintiff notes that Defendant's counsel's law firm was also counsel of record for the plaintiff-petitioner in *California Trucking Association v. Su* 903 F.3d 953 (9th Cir. 2016) as well as the defendant appellee *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014).  In these two cases, the Ninth Circuit addressed the exact FAAAA preemption argument now put forth by Defendant and soundly came to the conclusion that the FAAAA does not preempt California labor laws.

647–50 (meal and rest break laws); *Mendonca*, 152 F.3d at 1189 (prevailing wage law).  And indeed, the very issue at the heart of this lawsuit is about whether Plaintiff and the Class Members were employees who were misclassified by Defendant as independent contractors through invalid independent contractor agreements.

Defendant's instant motion does not address the merits as to whether Plaintiff and the Class were misclassified.  Instead, Defendant's motion focuses on the narrow question of whether or not the FAAAA preempts Plaintiff's claims under California labor laws.  As discussed in greater detail below, the Ninth Circuit has already determined that the FAAAA does not preempt California wage and hour law as it applies to truck drivers, such as Plaintiff.

In addition to the Ninth Circuit's holdings in *Su, Dilts,* and *Mendonca,* the California Supreme Court addressed the same question, and reached the same conclusion in *People ex rel. Harris v. Pac Anchor Transportation, Inc.,* 59 Cal.4th 772, 787 (2014) (holding that the FAAAA did not preempt a claim under California's Unfair Competition Law (UCL) arising out of the defendant's misclassification of its employee drivers as independent contractors.).  Thus, both the Ninth Circuit and the California Supreme Court have unequivocally rejected FAAAA preemption of California's labor laws as they pertain to truck drivers.

Therefore, the Court should deny Defendant's motion for Summary Judgment in its entirety and find that FAAAA does not preempt California labor laws.

## II.    Statement Of Facts And Procedural Background.

The issue raised by Defendant's motion – whether the FAAAA preempts California's generally applicable labor laws in regard to motor carriers – is a purely legal question.   Thus, although the facts of the case are not material to the determination of this legal issue, Plaintiff has included certain facts for the benefit of the Court.

Plaintiff Carlos Moreno's Opposition to Defendant John Christner Trucking, LLC's Motion for
Summary Judgment

### A.   JCT's Business Operations.

JCT is a trucking company that delivers goods for its customers through drivers who are either called owners-operators or contract-carriers, all of whom are classified by JCT as independent contractors.  PAF 1.  JCT's drivers are integral to JCT's business because "all trucking companies and logistics companies need drivers to transact freight."  PAF 2.  JCT's PMK testified as follows regarding the role its contract-carrier drivers play in JCT's operations:

> Q. Truck drivers are used in the usual course of JCT's business in brokering loads for its customers correct?
> A. Yes. Truck drivers are the ones delivering the loads, yes.
> PAF 3.

### B.   JCT's Relationship With Its Drivers.

JCT uses standard contracts, titled Broker/Carrier Agreement, for all its contract-carrier drivers.  PAF 4.  All contract-carriers must sign JCT's standard agreement before being allowed to drive for JCT.  PAF 5.  Plaintiff signed a Broker/Carrier Agreement in order to drive loads for JCT.  PAF 6.  Pursuant to the Broker/Carrier Agreement, Plaintiff was classified as independent contractor and was paid on a per mile basis.  PAF 7.

JCT, not the driver of the load, is listed as the motor carrier of record on the bill of ladings for the loads its drivers', such as Plaintiff, deliver.  PAF 8.  Contract carriers are not permitted to subcontract JCT work to another driver. PAF 9.  And JCT can terminate contract carriers at will.  PAF 10.

### C.   Procedural History.

Because Defendant has misclassified Plaintiff as an independent contractor through its Broker/Carrier Agreement, Plaintiff filed this class action complaint against JCT alleging causes of action for (1) failure to provide meal periods; (2) failure to provide rest breaks; (3) failure to pay minimum wages; (4) failure to furnish timely and accurate wage statements; (5) failure to reimburse business

expenses; and (6) violation of California's Unfair Competition Act ("UCL"). PAF 11.

Plaintiff's motion for class certification has been filed and is set to be heard on the same day as this motion.

## III.   Argument.

This lawsuit is about Defendant's  improper use of independent contractor agreements to try to skirt California wage and hour law in an effort to avoid costs and obligations it owes to its misclassified truck drivers.  In other words, Defendant willfully misclassified Plaintiff and other drivers as independent contractors.

Both the Ninth Circuit and the California Supreme Court have held that in misclassification cases, the FAAAA does not preempt California wage and hour law regarding the employee status of truck drivers.  *See Su,* 903 F.3d at 967*; Dilts*, 769 F.3d at 650; *Mendonca*, 152 F.3d at 1189;  *Pac Anchor,* 59 Cal.4th at 787. Therefore, this Court should likewise reject Defendant's arguments that the FAAAA preempts any of Plaintiff's claims and deny this motion.

### A.   Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Because summary judgment is a "drastic device," cutting off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of material fact. *Ambat v. City & County of San Francisco* 757 F3d 1017, 1031 (9th Cir. 2014). Finally, the facts are to be construed "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  Here, Defendant fails to meet this heavy burden.

### B.    The FAAAA Does Not Preempt The Applicable California State Wage And Hour Laws.

The FAAAA does not preempt the California wage and hour regulations applicable to Plaintiff's claims.

While the FAAAA provides that a "State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carriers . . . or brokers . . . with respect to the transportation of property," "it does not follow that a state law will be preempted in every instance where it defeats any term in in any carrier contract." 49 U.S.C. § 14501(c)(1); *Su*, 903 F.3d at 962.

Indeed, "the FAAAA does not preempt state laws that affect a carrier's prices, routes, or services in only a tenuous, remote, or peripheral…manner." *Su*, 903 F.3d at 960 (internal quotations omitted); *Rowe v. New Hampshire Motor Transport Ass'n* 552 U.S. 364, 371 (2008); *Morales v. Tans World Airlines, Inc.* 504 U.S. 374, 390. Here, the FAAA does not preempt California Labor Laws.

### 1.    There Is No Conflict Between California Wage And Hour Laws And Congress's Deregulatory Intent.

Contrary to Defendant's assertions, there is no preemption of California's labor laws based on a conflict with the deregulatory goals of the FAAAA. "In considering the preemptive scope of a statue, congressional intent is the ultimate touchstone." *Su,* 903 F.3d at 961; *Dilts*, 769 F.3d at 642. The principal purpose of the FAAAA was to prevent states from undermining federal deregulation of interstate trucking through a patchwork of state regulations. *Dilts*, 769 F.3d 644; *Su*, 903 F.3d a 960; *Mendonca*, 152 F.3d at 1187. It was not Congress' intent "to preempt generally applicable state transportation safety, welfare, or business rules that did not otherwise regulate prices, routes, or services." *Su,* 903 F.3d at 962.

Indeed, it has been well recognized that "[s]tate laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest." *Mendonca*, 152 F.3d at 1186-1187. And, generally applicable labor protections are an area of traditional state

power. *Mendonca* 152 F.3d at 1186; *Su*, 903 F.3d at 966; *Dilts,* 769 F.3d at 642-643. Moreover, "when assessing preemption… the scope of the pre-emption must be tempered by the presumption against the pre-emption of state police power and regulations" and "Congress did not intend to preempt laws that implement California's traditional labor protection powers, and which affect motor carrier's rates, or services in only tenuous ways." *Ibid*; *see also Dilts* 769 F.3d at 647-650; *Mendonca*, 152 F.3d at 1189.

*Su* is instructive – it involved an appeal by an association of motor carriers against the California Labor Commissioner seeking a declaration that the FAAAA preempted the Commissioner's use of the *Borello* test to assess the claims of whether independent contractor truck drivers were misclassified and, thus, denied certain benefits under the California Labor Code. *Su*, 903 F.3d at 957. There, the Ninth Circuit specifically held that the FAAAA did not preempt the use of the *Borello* test for assessing whether independent contractor truck drivers were misclassified by the defendant. *Su*, 903 F.3d at 967.

The Ninth Circuit reasoned that FAAAA preemption of California's generally applicable wage and hour laws would permit motor carriers the unchecked ability to contract around California's labor laws "simply by obtaining [the] owner-operators' consent to label them as independent contractors and thus exclude them from such protections." *Su*, 903 F.3d at 963. The Ninth Circuit flatly stated that such a position "defies logic." *Ibid*. Yet, that is exactly the argument that Defendant makes here – that this Court should find California's generally applicable wage and hour protections are preempted by the FAAAA so that Defendant may continue to shirk its obligations to employees by having them sign an independent contractor agreement.

Further, the Ninth Circuit has already specifically held that California's regulations regarding meal and rest breaks are not preempted by the FAAAA in the

6

context of a lawsuit arising out of the misclassification of truck drivers. *Dilts*, 769 F.3d at 650. "California's meal and rest break laws plainly are not the sorts of laws related to prices, routes, or services that Congress intended to preempt." *Id*. at 647. California's wage and hour laws do not set prices, mandate or prohibit certain routes, or tell motor carriers what services they may or may not provide. *Ibid*. Thus, California's meal and rest break laws are not "related to prices, routes or services in the way that Congress intended [to be preempted]." *Ibid* (Internal quotations omitted).

Indeed, when the law is generally applicable background regulation in an area of traditional state power that has no significant impact on a carrier's prices, routes, or services," then no preemption occurs. *Ibid; see also Dilts*, 769 F.3d at 646. "[P]revailing wage laws or safety regulations, are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that the provide." *Dilts*, 769 F.3d at 646. "Such laws are not preempted even if they raise the overall cost of doing business or require a carrier to re-direct or reroute some equipment. *Ibid*.

Although *Mendonca* involved California's Prevailing Wage law, which is not at issue in this case, its reasoning is still applicable to the instant matter. There, the Ninth Circuit noted that Congress identified 41 jurisdictions that regulated intrastate prices, routes, and services and 10 jurisdictions which did not regulate these areas, and of those ten jurisdictions that did not, seven of them have or had generally prevailing wage laws substantially similar to the CPWL. *Mendonca*, 152 F.3d at 1187. Thus, the Ninth Circuit concluded that Congress did not intend to preempt the substantially similar CPWL. *Mendonca*, 152 F.3d at 1188.

California's wage and hour laws are normal background rules for all employers doing business in California and are not the sort of laws that are "related to" process, routes, or services that congress sought to preempt. *Dilts*, 769 F.3d at

647. Indeed, they are broad laws that apply across the board to hundreds of different businesses and in no way bind motor carriers to specific prices, routes, or services. *Ibid*. Therefore, it is clear that it was not Congress' intent to preempt California's wage and hour laws at issue in this case and laws upon which Plaintiff bases his claims are not preempted by the FAAAA.

Moreover, the Ninth Circuit rulings in *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) and *Northwest, Inc. v. Ginsberg,* 572 U.S. 273 (2014), upon which Defendant relies, do not support FAAAA preemption in this case. Indeed, *Wolens* and *Ginsberg* "did not announce a broad rule that preemption occurs whenever a state law touches any aspect of a carrier's contractual relation with anyone." *Su*, 903 F.3d at 961. Further, the Ninth Circuit in *Su* recognized that the details of the *Wolens* and *Ginsberg* matter and are distinguishable, and reached the conclusion that Congress did not intend to hinder States from imposing normative policies on motor carriers as employers. *Id.* at 963.

*Ginsberg* involved a plaintiff who brought suit against an airline over the revocation of his airline frequent flyer membership with said airline. *Ginsberg,* 572 U.S. at 277. The plaintiff pointed to state laws requiring the airline to provide specific services. *Id.* at 284-286. Thus, the Supreme Court held the frequent flyer program was connected to the airlines rates because the program awarded mileage credits that could be used to redeem tickets, upgrades, or otherwise reduce the rate a customer paid. *Id.* at 285. Therefore, the Supreme Court held that claims brought by the *Ginsberg* plaintiff were preempted.

*Wolens* also involved a lawsuit based on state laws for the retroactive modification of a frequent flyers program. *Wolens*, 513 U.S. at 222. There the US Supreme Court held that the "ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services." *Id.* at 232.

8

However, as pointed out in *Su,* both *Ginsberg* and *Wolens* are inapplicable in the context of generally applicable wage and hour laws. *Su*, 903 F.3d at 961 ("[W]e have made clear that those cases [*Ginsberg* and *Wolens*] are inapplicable, and so no preemption occurs, when the law is a generally applicable background regulation in an area of traditional state power that has no significant impact on a carrier's routes, prices, or services."); *see also Dilts,* 769 F.3d 642-60; *Mendonca*, 152 F.3d at 1185-1189.  Here, just as in *Su*, *Dilts,* and *Mendonca*, Plaintiff's claims are based on general background laws applicable to all employees in California.  *Id*. at 967 (the FAAAA does not preempt the use of the *Borello* test with respect to the employment status of motor carriers because it is a "generally applicable, common law test [and] is not related to motor carriers' prices, routes, or services.").

Therefore, it was not Congress' intent to preempt Plaintiff's claims and the FAAAA does not preempt Plaintiff's claims.

### 2. California's Wage And Hour Laws Do Not Require Trucking Companies To Use Employee Drivers.

Defendant's contention that Plaintiff's claims require any driver to be the employee of a trucking company is a mischaracterization of this case.  Plaintiff's claims are based on the notion that Defendant improperly classified him and other drivers as independent contractors in order to avoid California wage and hour laws due to employees.

As stated in *Su,* the Ninth Circuit has already rejected the argument that California labor laws somehow compel Defendant to use employees instead of independent contractors.  There, the Ninth Circuit rejected the appellant's contention that applying the *Borello* test to assess whether truck drivers were misclassified improperly compelled the use of employee drivers instead of independent contractors.  *Su*, 903 F.3d at 964.  Applying the *Borello* test to owner-operator drivers to assess their employment status did not compel the use of employees to provide certain carriage services.  *Ibid.*

California's Supreme Court has also weighed in on this argument and similarly held that California's wage and hour laws do not require that motor-truck carriers be a employees. *Pac Anchor*, 59 Cal.4th at 787 ("Defendants are free to use independent contractors as long as they are properly classified."). California law merely prevents employers from passing off legal obligations and expenses on to employees by simply misclassifying them as independent contractors - which is exactly what Defendant has done here.

Defendant's reliance on *Am. Trucking Assn's, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1056 (9th Cir. 2011), is unavailing. There, the Ninth Circuit held that the FAAAA likely preempted the Ports of Los Angeles and Long Beach's directive that motor carriers must use employee drivers and must give hiring preference to more experienced drivers. *Id*. at 1053-57. However, none of the laws at issue specifically require the use of employees like in *Am. Trucking*.

In fact in *Su*, the Ninth Circuit already stated the inapplicability of *Am. Trucking* to general wage and hour laws, noting that *Am. Trucking* stands only for the "obvious proposition that an all or nothing rule *requiring* services be performed by certain types of employee drivers was likely preempted." *Su*, 903 F.3d at 964 (emphasis added.). *Su* further found that that the plaintiff-appellant in that case made no showing that the *Borello* standard makes it more difficult for its members to use independent contractors. *Ibid*. Clearly, none of the laws upon which Plaintiff bases his claims require Defendant to use independent contractors.

Further, "the mere fact that a motor carrier must take into account a state regulation when planning services is not sufficient to require FAAAA preemption." *Su*, 903 F.3d at 965; *Dilts*, 769 F.3d at 649. "At most, carriers will face modest increases in business costs or will have to take the *Borello* standard and its impact on labor laws into account when arranging operations." *Su*, 903 F.3d at 965.

Here, unlike *Am. Trucking*, we are not dealing with a law mandating the use of employees as driver, rather like *Su,* the issue is one of misclassification of drivers and the violations of California state law that follow from that misclassification.

Therefore, there is no preemption of Plaintiff's claims on the basis that California labor laws require motor carriers to use employee drivers, as there is no such requirement.

### 3. Plaintiff's Claims Do Not Seek To Use California State Law To Alter Any Contract.

Defendant's argument, that Plaintiff is attempting to use California state law to alter contracts between Plaintiff and Defendant, holds no merit.

### a. There Is A Genuine Dispute As To The Existence Of A Contract Between Plaintiff And Defendant.

Firstly, Defendant's argument that Plaintiff is improperly attempting to alter a contract is flawed in that it presupposes that there was a valid independent contractor agreement in place between Plaintiff and Defendant, which itself presupposes that Plaintiff was an independent contractor and not a misclassified employee.  However, because Defendant cannot contract around California's generally labor protections, Plaintiff must actually be an independent contractor for there to be a valid independent contractor agreement.  *See Su*, 903 F.3d at 963.  But Defendant has not provided evidence showing "that there is no genuine dispute" as to Plaintiff's employment status and did not make any such argument in its motion.

Under the ABC test laid out in test laid out in *Dynamex Operations W. v. Sup Ct.,* 4 Cal. 5th 903 (2018),  a person is presumptively an employee unless the hiring entity can establish:

> (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Id.* at 916-17.

11

Defendant already admitted through its PMK that Plaintiff and all its drivers are used "in the usual course of JCT's business in brokering loads for its customers." PAF 3. This alone makes it clear that under the ABC test Defendant has not and cannot provide undisputable evidence that Plaintiff was an independent contractor. Indeed, if Defendant could make such a showing, it would have brought a motion for summary judgment on that basis, not the instant motion premised on FAAAA preemption.

Moreover, to the extent that the *Borello* test applies to any of Plaintiff's causes of action, such as Plaintiff's claim for unreimbursed expenses, the Ninth Circuit has already held that the *Borello* test is not preempted by the FAAAA in the context of analyzing the employment status of truck drivers. *Su,* 903 F.3d at 967. And Defendant has made any argument nor provided any evidence under the *Borello* test to dispute Plaintiff's contention that he was misclassified.

### b. California's Wage And Hour Laws Are Not Related To Prices, Routes, Or Services, And Are Therefore Not Preempted.

Defendant's argument – that Plaintiff's claims are preempted because they relate to the price a motor carrier charges its customer – also fails. "While related to preemption is broad, this does not mean that the sky is the limit," and "the FAAAA does not preempt state laws that affect a carrier's prices, routes or services in only a tenuous, remote, or peripheral…manner." *Su*, 903 F.3d at 960 (internal quotations omitted.). Indeed, it was not Congress' intent "to preempt generally applicable state transportation safety, welfare, or business rules that did not otherwise regulate prices, routes, or services." *Su,* 903 F.3d at 962. And a state law is preempted by the FAAAA only if there is "a *significant* impact on carrier rates, routes or services." *Dilts*, 769 F.3d at 645.

*Mendonca* is a case in point. In *Mendonca*, the Ninth Circuit considered the argument that the California Prevailing Wage Law related to prices, routes, and

services because it caused an increase in a carrier's prices by 25% and may compel the carrier to redirect or reroute service. *Mendonca*, 152 F.3d at 1189. The court admitted that the CPWL thus touched on prices, routes, and services in a certain sense, but it did not frustrate the purpose of deregulation by acutely interfering with forces of competition nor did it fall into the field of laws specifically regulating prices, routes, or services. *Ibid*. Therefore, the court held that any effect on prices, routes, or services was indirect, remote and tenuous and such that California's Prevailing Wage Law did not fall into the field of laws regulating prices routes, or services. *Mendonca*, 152 F.3d at 1189. "Accordingly, [the Ninth Circuit held] that the CPWL is not related prices, routes, and services within the meaning of the FAAA Act's preemption clause" and "[t]he FAAA Act thus does not preempt the CPWL." *Ibid*.

Here, just as in *Mendonca*, California's wage and hour laws protecting Plaintiff and other employees from willful misclassification do not "relate to the FAAAA" as they do not fall within the field of laws regulating prices, routes, or services and any effect these laws have upon the prices, routes, or services of motor carriers is too tenuous, making FAAAA preemption inapplicable.

The Ninth Circuit arrived at the same conclusion in *Dilts*. There, the Ninth Circuit noted that "[n]early every form of state regulation carries some cost." *Dilts*, 769 F.3d at 646. However, the court held that a regulation having a financial impact on prices is not enough to trigger FAAAA preemption. *Dilts*, 769 F.3d at 646 ("generally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted, even if employers must factor those provisions into their decisions about prices that they set.").

Requiring meal and rest breaks did not have a significant impact as it did not set prices, mandate or prohibit certain routes, or dictate what services the carrier

could provide despite the potential result that a motor carrier may have to hire additional drives, face other additional costs, or reallocate resources to provide the same level of service. *Dilts*, 769 F.3d at 647. *Dilts* specifically stated that California's meal and rest break law "has nothing to say about *what* services an employer does or does not provide." *Dilts*, 769 F.3d at 648 (Italics original.) (Motor carriers must take California's rest break laws into account – just as they would take into account speed limits or weight restrictions, which are also not preempted by the FAAAA.)

*Su* similarly held that there was no FAAAA preemption of the *Borello* employment test because there was no significant impact on a carrier's prices, routes, or services. *Su,* 903 F.3d at 966 (Plaintiff-appellant failed to demonstrate that the application of the *Bordello* standard impacted prices, routes, or services in any significant way.).

Here, as in *Su, Dilts*, and *Mendonca*, the laws underlying Plaintiffs claims have no significant impact on the prices, routes, or services of motor carriers, and thus, are not subject to FAAAA preemption.

Defendant's attempt to differentiate *Dilts* and *Su* is unavailing.  Defendant spuriously attempts to distinguish the Ninth Circuit's holdings in *Dilts* and *Su* on the basis that *Dilts* involved a situation where there was no dispute as to the driver's employee status, and that *Su* involved a situation in which drivers operated under the defendant motor carrier's operating authority. MSJ at 11:14. This is not true. [2]

However, even assuming these claimed differences to be true, Defendant is incorrect in its assertion that this difference is critical – this they do nothing to

---

[2] Defendant states that the drivers in the *Su* case "operated under the defendant motor carrier's authority."  MSJ 11:14.  The *Su* case never reaches such a conclusion, and Plaintiff is unable to locate support for this assertion in the text of the *Su* ruling.

Plaintiff Carlos Moreno's Opposition to Defendant John Christner Trucking, LLC's Motion for Summary Judgment

differentiate the applicability of *Dilts* and *Su* to the case at hand. [3]  Whether or not there is a dispute about the Plaintiff's employee status or whether Plaintiff operated under his own operating authority may go to the merits of whether or not he was improperly classified as an independent contractor.  However, as Plaintiff has explained above, the motion at issue only addresses a legal issue of whether FAAAA preempts California labor laws.

Further, it is clear that the factual background of both *Dilts* and *Su* that they are remarkably similar to the case at hand.  In *Dilts* the Ninth Circuit expressly held that California's meal and rest breaks as applicable to delivery drivers and installers are not preempted under the FAAAA.  *Dilts*, 769 F.3d at 650.  This is one of the very issues in this case – Plaintiff, a truck driver, alleges that he, along with other putative class members, are owed meal and rest break premiums as a result of Defendant's misclassification.  Thus, the FAAAA does not preempt California's generally applicable labor laws, such as meal and rest breaks, as they apply to ruck drivers.  *Ibid*.  The fact that Defendant disputes Plaintiff's employee status does nothing to defeat or differentiate the holding in *Dilts*.

*Su* is even more factually similar.  In *Su*, the Ninth Circuit's determined that the *Borello* test was not preempted by the FAAAA for use when assessing whether truck drivers classified as independent contractors were actually misclassified employees.  *Su,* 903 F.3d at 967.  Again, even taking as true Defendant's purported difference – that the drivers in *Su* did not have their own operating authority and that Plaintiff operated under his own authority – that does not change the fact that FAAAA does not preempt that ability of the Court to assess whether a driver is a misclassified employee.

---

[3] Plaintiff notes that Defendant made no attempt to differentiate *Mendonca* from the case at hand.  However, any attempt to differentiate *Mendonca* would fail – as Plaintiff has explained, Mendonca held that FAAAA preemption does not preempt California labor laws.  *Mendonca*, 152 F.3d at 1189.

In other words, Defendant is conflating the merits of this case – whether Plaintiff was misclassified – with the issue of preemption of California labor law under the FAAAA. Defendant's attempt to differentiate this case from *Su* and *Dilts* is meritless, and the Court should find that there is no FAAAA preemption of Plaintiff's claims.

### c. Plaintiff's Claims Do Not Seek To Change Or Undo The Terms Of Any Agreement.

The Ninth Circuit has already explicitly rejected Defendant's argument that California's wage and hour laws impermissibly interfere with motor carrier contracts. *Su*, 903 F.3d at 962-963 (Holding that there is no FAAAA preemption when the contractual relationship is between a carrier and its *workforce*, and the impact is on the *protections* afforded that workforce.) (Italics original.). This case is exactly the same, Defendant is attempting to use the FAAAA to attack protections afforded to a workforce by California law by unlawfully contracting around them.

Firstly, Defendant's argument that Plaintiff is attempting to undo a contract presupposes that Defendant has the power to contract around California wage and hour law – it does not. *See Su*, 903 F.3d at 963 ("Our conclusion that Congress did not intend to preempt these generally applicable labor laws could be nullified if motor carriers have the unchecked ability to contract around these laws simply by obtaining owner-operators' consent to label them as independent contractors and thus exclude them form such protections.").

Secondly, Defendant incorrectly asserts that Plaintiff's claims "relate to the price a motor carrier charges its customers." MSJ 11:9-10 (internal quotations omitted). As discussed above, the generally applicable California wage and hour laws underlying Plaintiff's claims do not relate to prices, routes or services within the meaning of FAAAA preemption. *Su,* 903 F.3d at 967; *Dilts*, 769 F.3d at 646; *Mendonca*, 152 F.3d at 1189.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Thirdly, Defendant's argument that Plaintiff's claims are preempted because they would operate "at the point where carriers provide services to customers at specific prices," is incorrect and directly contrary to the Ninth Circuit's findings in *Su,* the very case Defendant relies upon for its contrary proposition.  MSJ 11:9-10; *Su*, 903 F.3d at 965 *quoting Dilts,* 769 F.3d at 646.

Defendant wholly omits from its points and authorities the fact that in *Su*, the Ninth Circuit held that using the *Borello* standard to assess the misclassification of employees was not preempted by the FAAAA because it was a generally applicable background regulation that was several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations.  *Su*, 903 F.3d at 961-964; *see also Dilts,* 769 F.3d at 646.

Indeed, California wage and hour laws are general background regulations with only an indirect, remote and tenuous relationship with carrier prices.  *Su*, 903 F.3d at 967 ("The FAAAA does not preempt… using the *Borello* standard with respect to motor carriers because this generally applicable, common law test is not 'related to' motor carriers prices, routes, or services."); *Dilts,* 769 F.3d at 650 ("The FAAAA does not preempt California's meal and rest break laws as applied to Defendants, because those state laws are not 'related to' Defendant's prices, routes, or services."); *Mendonca* 152 F.3d at 1189 (No FAAAA preemption because California's Prevailing Wage Law related to a motor carrier's prices routes, and services only in an "indirect, remote, and tenuous" way.)

 Nor does *Wolens* support Defendant's contentions.  As explained above, the Ninth Circuit has already held that *Wolens* is inapposite where the underlying claims are California labor law claims.  Specifically, the Ninth Circuit acknowledged that the case is factually distinct and "the details of *Wolens* and *Ginsberg* matter because Congress did not intend to hinder states form imposing normative polices on motor

carriers as employers." *Su*, 903 F.3d at 963; *see also Dilts*, 769 F.3d at 642-650; *Mendonca* 152 F.3d at 1189-1189.

Lastly, Defendant's reliance on *Dans City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013) is misguided.  In that case the US Supreme Court held that there was no FAAAA preemption because the claims at issue did not relate to the "service of a motor carrier with respect to transportation of property." *Id*. at 262.  *Dan's City Used Cars* contemplated a completely different set of facts from this case and it provides no relevant analysis save the general proposition that for the FAAAA to apply there must be "transportation of property" which is not disputed in this case. *Ibid*.  Thus, it provides no support to Defendant's preemption arguments.

## IV.   Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion for Summary Judgment be denied.


DATED:  December 12, 2018          **HAFFNER LAW PC**


By:     /s/Graham G. Lambert_____
        Joshua H. Haffner
        Graham G. Lambert
        *Attorneys for Plaintiff*

Plaintiff Carlos Moreno's Opposition to Defendant John Christner Trucking, LLC's Motion for Summary Judgment

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby **certify that I electronically filed** the foregoing with the Clerk of the Court for the United State District Court – Central District by using the CM/ECF system on December 12, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: December 12, 2018                   /s/ Graham G. Lambert
                                          Graham G. Lambert

Plaintiff Carlos Moreno's Opposition to Defendant John Christner Trucking, LLC's Motion for Summary Judgment