Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Trevor Weinberg, SBN 330778
(tw@haffnerlawyers.com)
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, CA 91403
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Attorneys for Plaintiff and all others similarly situated

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS MORENO, an individual; on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JCT LOGISTICS, INC; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 5:17-cv-02489-JGB-KK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: April 10, 2023<br>Time: 9:00 a.m.<br>Location:  Courtroom 1 |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **April 10, 2023 at 9:00 a.m**. or as soon thereafter as the matter may be heard in Courtroom 1 of the above-entitled court located at 3470 Twelfth Street, Riverside, CA 92501, Plaintiff Carlos Moreno ("Plaintiff"), individually, and on behalf of all others similarly situated ("Class Members"), will, and hereby does, move the Court pursuant to Fed. R. Civ. P. 23(e) for an order that: (1) Grants preliminary approval of the proposed $1,200,000.00 settlement of *Carlos Moreno v. JCT Logistics, Inc.* C.D. Cal. Case No. 5:17-cv-02489-JGB-KK, attached as Exhibit 1 to the Declaration of Joshua H. Haffner filed herewith, as fair, reasonable, and adequate; (2) approving and directing distribution of notice to the Class; (3) approving the proposed Settlement Class Representative, Settlement Class Counsel and Settlement Administrator; and (4) setting a final approval hearing.

The settlement should be preliminarily approved, and notice of the proposed settlement should be distributed to Class Members, because the Settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval," such that preliminary approval is appropriate. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Further, the proposed notice of settlement complies with due process requirements and is the "best notice that is practicable under the circumstances," as it provides Class Members an opportunity to fully assess the Settlement, including Plaintiffs' motion for attorneys' fees and costs, before deciding whether to opt out or submit objections. Fed. R. Civ. P. 23(c)(2)(B).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1    This Motion is based upon this Notice, the accompanying Memorandum of

2    Points & Authorities, the Settlement Agreement, the Declaration of Joshua H. Haffner

3    filed herewith, all papers and pleadings on file in this action, and such oral argument

4    as may be considered by the Court at the time of the hearing.

5    DATED:  March 1, 2023                              **HAFFNER LAW PC**

6

7

8                                                      By: /s/ Trevor Weinberg

9                                                          Joshua H. Haffner

10                                                         Trevor Weinberg

                                                           *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENT

I.    INTRODUCTION.................................................................................... 1

II.   PROCEDURAL BACKGROUND ........................................................... 2

III.  PRINCIPAL SETTLEMENT TERMS ................................................... 2

    A.   CLASS DEFINITION ........................................................................ 2

    B.   KEY SETTLEMENT TERMS ............................................................ 3

    C.   CLASS NOTICE ............................................................................... 4

    D.   ATTORNEYS' FEES AND LITIGATION EXPENSES ...................... 6

IV.   ARGUMENT ........................................................................................ 6

A.    Legal Standards For Preliminary Approval ........................................ 6

    B.   THE SETTLEMENT IS NON-COLLUSIVE .................................... 7

    C.   THE SETTLEMENT DOES NOT GRANT IMPROPER PREFERENTIAL
TREATMENT TO THE CLASS REPRESENTATIVE OR OTHER SEGMENTS OF
THE CLASSES ....................................................................................... 9

    D.   THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL
      10

E.    The Settlement Has No Obvious Deficiencies ............................... 16

    1.   Release ................................................................................... 16

    2.   Notice Plan ............................................................................ 17

F.    THE SETTLEMENT IS FUNDAMENTALLY FAIR, ADEQUATE, AND
REASONABLE ...................................................................................... 18

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

1.    Strength Of Plaintiff's Case .................................................................. 18

2.    Risk, Expense, Complexity, And Likely Duration Of Further Litigation............ 19

3.    Risk Of Maintaining Class Action Status Throughout The Trial ........................ 19

4.    Amount Offered In Settlement ................................................................. 20

5.    Extent Of Discovery Completed And The Stage Of The Proceedings ................ 20

6.    Experience And Views Of Counsel ......................................................... 21

7.    Presence Of A Governmental Participant ................................................. 22

8.    Opposition By Class Members.................................................................. 22

IV.    CONCLUSION ......................................................................................... 22

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF AUTHORITIES

Cases

*Ayala v. U.S. Xpress Enters., Inc.*, 851 Fed. Appx. 53 (9th Cir. 2021) ................................ 15

*Barbosa v. Cargill Meat Solutions Corp.* 1:11-CV-00275-SKO, 2013 WL 3340939 (E.D. Cal. 2013)................................................................................................................................. 19

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ..................... 10

*Bellinghausen v. Tractor Supply Company,* 303 F.R.D. 611, 623-624 (N.D. Cal. 2014) .... 15

*Bowerman v. Field Asset Servs., Inc.*, Nos. 18-16303, 18-17275, 2023 WL 2001967 (9th Cir. Feb. 14, 2023)........................................................................................................................ 14

*Byrne v. Santa Barbara Hospitality Services, Inc.*, 2018 WL 10483678 (C.D. Cal. 2018) ... 9

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................ 7, 18

*City of Detroit v. Grinnell Corp.* 495 F.2d 448 (2nd Cir. 1974)........................................ 20

*Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................................... 16

*Deaver v. Compass Bank*, 2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ........................... 16

*Dynamex Operations W. v. Superior Court*, 4 Cal.5th 903 (2018)................................ 13, 19

*Gonzalez v. BMC West, LLC*, 2018 WL 6318832 (C.D. Cal. 2018)...................................... 9

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ........................................................... 16

*In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008)...................... 16

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................. 21

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078 (N.D. Cal. 2007)...................... 2, 7, 11

*In re Volkswagen,* 895 F.3d 895 F.3d 597 (9th Cir. 2018) .................................................... 9

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

*Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841 (9th Cir. 2021) .................................................................................................. 11, 13

*Kutzman v. Derrel's Mini Storage, Inc.*, Case No. 1:18-cv-00755 AWI-JLT, 2020 WL 406768 (E.D. Cal. Jan. 24, 2020) ........................................................................ 16

*LED, LLC v. eBay, Inc.*, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ............................. 16

*Linney v. Cellular Alaska Partnership* 151 F.3d 1234 (9th Cir. 1998)................................ 20

*Moppin v. Los Robles Regional Medical Center*, 5:15-cv-01551-JGB-DTB ........................ 9

*n re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.,* 2017 WL 22212780 (N.D. Cal. May 17, 2017) ................................................................ 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004)............ 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651 (9th Cir. 2022) .................................................................................................................... 14

*Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762 (2020) ....................................................... 14

*Rodriguez v. West Publ'g Corp.* 563 F.3d 948 (9th Cir. 2009) ........................................... 18

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .......................................... 10

*Roes, 1-2 v. SFBSC Management, LLC* 944 F.3d 1035 (9th Cir. 2019) ................................ 9

*Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 20078

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ............................................................... 17

*Spann v. J.C. Penney Corp.*, 211 F.Supp.3d 1244 (C.D. Cal. 2016) ................................... 10

*Valiente v. Swift Transport. Co. of Az.*, 54 F. 4th 581 (9th Cir. 2022)................................ 13

*Weinstein v. Mortgage Contracting Services, LLC*, 2018 WL 11377827 (Oct. 23, 2018)..... 9

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Statutes

Cal. Labor Code § 2776 ................................................................. 13, 19

Fed. R. Civ. P. 23(c)(2)(B) ............................................................. 2, 17

Fed. R. Civ.P. 23(e)(2) .................................................................. 7

Lab. Code § 226.7(d) ................................................................... 13

Labor Code § 226.2 ..................................................................... 13

Labor Code §1194.2 .................................................................... 12

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Carlos Moreno ("Plaintiff") respectfully submits this Motion seeking preliminary approval of a proposed settlement ("Settlement") of a putative class action which will resolve California wage and hour claims against defendant John Christner Trucking, LLC ("Defendant") arising out of Defendant's policies and procedures for truck drivers who were classified by Defendant as independent contractors or who worked for individuals and/or companies that Defendants classified as independent contractors. The terms of this settlement are reflected in the Settlement Agreement attached as Exhibit 1 to the Declaration of Joshua H. Haffner ("Haffner Decl.").

This settlement follows discussions and negotiations between counsel for the parties, formal and informal discovery, depositions, a contested class certification motion, a motion for summary judgment, two full-day mediations, as well as investigation and evaluation of the claims of Plaintiff by the parties. Haffner Decl., ¶18. These activities have permitted both sides to accurately assess the merits of the claims and the defenses to those claims, and compromise the issues in a fair and equitable basis. The parties have therefore concluded it is desirable that the action be settled upon such terms and conditions set forth in the Settlement Agreement. See Haffner Decl., Exh. 1 (Joint Stipulation of Settlement and Release of Class Action Claims (Settlement Agreement)).

In exchange for the releases set forth in the Settlement Agreement, Defendant has agreed to a settlement that provides monetary relief for the Class Members and Subclass Members as defined in the Settlement Agreement. This settlement involves a settlement fund in the amount of $1,200,000.00. This is a good result that benefits the class. Plaintiff and the Classes face uncertainty litigating this dispute through trial and potential appeals. Therefore, Plaintiff submits that this Settlement Agreement, in light of the above considerations, should be preliminarily approved.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## II.    PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint against JCT Logistics, Inc. on July 6, 2017 in Superior Court of California, County of San Bernardino, Case No.: CIVDS1712772. Haffner Decl., Exh. 2. On July 27, 2017, Plaintiff filed an Amendment to Complaint, naming Defendant as a defendant in the action. Haffner Decl., Exh. 3. On December 13, 2017, this lawsuit was removed to this Court, United States District Court For The Central District Of California. Haffner Decl., ¶5.

Following discovery, Plaintiff filed a Motion for Class Certification on October 31, 2018. Haffner Decl., Exh. 4. After substantial briefing in support of the motion, Plaintiff's Motion was granted in part on May 29, 2019. Haffner Decl., Exh. 5. Defendant filed a Motion for Summary Judgment on November 19, 2018. Haffner Decl., ¶8. The Court denied the motion for summary judgment on January 8, 2019. Haffner Decl., Exh. 6.

The parties first conducted mediation in an attempt to settle this case on September 5, 2018. Haffner Decl., ¶10. However, the parties were unable to come to an agreement. (*Id*.) On March 3, 2020, the Court granted the parties' joint stipulation to stay the action pending the outcome of three key cases pending in the California Supreme Court and the Ninth Circuit Court of Appeals. Haffner Decl., ¶11. The stay was lifted on July 8, 2022. *Id*. The parties conducted a second mediation on November 23, 2022, where the case ultimately settled. Haffner Decl., ¶12.

## III.    PRINCIPAL SETTLEMENT TERMS

### A. Class Definition

The Settlement Classes are broken down between the Primary Class and Subclass. The Primary Class is defined as:

> All current and former California residents who submit a valid Claim Form and who drove for Defendant John Christner Trucking, LLC (JCT), intrastate pursuant to a contract-carrier agreement at any time from July 6, 2013, through the date the Court enters preliminary approval of this settlement (Class Period).

2

1   The Subclass is defined as:

2       All current and former California residents who individually, or
3       on behalf of a company they owned, entered into a contract-
        carrier agreement with JCT and drove California intrastate loads
        brokered by JCT to the Contract Carrier at any time during the
4       Class Period.

5       The Class Period is defined as July 6, 2013, through the date the Court enters

6   preliminary approval of this settlement. The reason for these specific dates is they are

7   determined by the date the lawsuit was initially filed. This lawsuit was initially filed

8   in Superior Court of California, County of San Bernardino on July 6, 2017, so the

9   period reached back four years prior to the filing date. The parties have determined

10  that there are approximately 122,689 intra-state loads (Loads) that may have been

11  driven by Class Members and Defendant brokered Loads to approximately 2,590

12  third party carriers (Contract Carriers) through August 2022. These figures will be

13  updated through the date of preliminary approval.

14      **B. Key Settlement Terms**

15      The Gross Settlement Amount is $1,200,000.00. Attorneys' Fees will be up to

16  $400,000 (1/3 of the Gross Settlement Amount). Attorneys' Costs will be up to

17  $20,000. The Incentive Award will be up to $10,000, and Settlement Administration

18  costs will be up to $40,000. These fees, costs, and incentive awards will be subtracted

19  from the Gross Settlement Amount to derive the Net Settlement Amount. The

20  Settlement Administrator will divide the Net Settlement Amount by the total Loads

21  to arrive at a payment per load that will form the basis of the settlement payments

22  (Payment Per Load). A minimum of 45% of the Net Settlement Amount is non-

23  reversionary. The non-revisionary amount is necessary because the Parties do not

24  have knowledge of the Class Member who drove many of the Loads covered by the

25  Settlement. Therefore, drivers who believe they are members of the Primary Class

26  will need to submit a Claim Form to receive a settlement payment.

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

1    Contract Carriers who only had one truck under contract (Single Truck
2    Contract Carrier) are presumed to be Subclass Members and will be eligible to
3    receive the Payment Per Load for all Loads that Defendant's records show were
4    brokered to that Single Truck Contract Carrier without filing a Claim Form. These
5    payments will be based on the presumption that the owner of a Single Truck Contract
6    Carrier was the individual who drove the Loads. However, if a Primary Class
7    Member submits a Claim Form relating to Loads brokered to a Single Truck Contract
8    Carrier, the Settlement Administrator will notify that Single Truck Contract Carrier
9    of the need to submit a Claim Form so the Parties and the Settlement Administrator
10   can resolve the competing claims for those Loads and make a final determination as
11   to how the settlement related to those Loads should be paid. Haffner Decl., Exh. 1, p.
12   22.

13   **C. Class Notice**

14   The Settlement provides that a Notice of Settlement will be sent, via first-class
15   U.S. Mail to all Contract Carriers to which Defendant brokered Loads during the
16   Class Period. If Defendant can provide an email address or cell phone number for a
17   Contract Carrier, a Notice of Settlement will also be sent by email or text message.
18   Haffner Decl., Exh. 1, p. 17. In addition, Contract Carriers who are not Single Truck
19   Contract Carriers will be asked to post the Notice of Settlement at their place of
20   business as an additional method of distributing the settlement information to the
21   Primary Class Members who drove the Loads under the Contract Carriers' motor
22   carrier authority. Any returned envelopes containing the Notice from this mailing
23   with forwarding addresses will be used by the Settlement Administrator to locate
24   Class Members. *Id*. In the event prior to the Opt-Out Deadline, any Notice mailed to
25   a Contract Carrier or a Class Member identified during the claims process is returned
26   to the Settlement Administrator as having been undelivered by the U.S. Postal
27   Service, the Settlement Administrator shall perform a skip trace search and seek an
28

4

address correction for such Contract Carrier, and a second Notice will be sent to any new or different address obtained. *Id*.

Additionally, the Parties have agreed that the Notice will be published in publications that the Parties have determined are disseminated regularly to or among individuals who could be a Class Member in this case, including, but not limited to, The Trucker, Overdrive Magazine, Fleet Owner, Road King, and American Trucker. Haffner Decl., Exh. 1, p. 19. The Settlement Administrator will also create a website for the Settlement which will allow Class Members to view the notice and obtain a Claim Form. Haffner Decl., Exh. 1, p. 26.

The Parties believe that this will be the most effective way to distribute notice. Single Truck Contract Carriers are members of the Subclass and will therefore have the Notice mailed and/or emailed or texted directly to them. Based on the information available to date, Defendant believes that approximately 833 of the 2,590 Contract Carriers are Single Truck Contract Carriers. Contract Carriers with multiple trucks will also have Notice mailed directly to them and will be asked to post the Notice as an additional method of reaching the Class Members who drove the Loads under the Contract Carrier's motor carrier authority and, therefore, may be Class Members. Notice by publication is also necessary because the Parties do not have knowledge of the identities and/or contract information for many of the drivers who worked for the Contract Carriers and who may be members of the Primary Class or the Subclass, to the extent the driver worked for a Contract Carrier that provided multiple trucks to haul the Loads.

Pursuant to Rule 23, the Notice will include information concerning the nature of the lawsuit; the release; the definitions of the Classes; the claims, issues, and defenses; the process for filing a Claim Form; that Class Members may opt out or object to the Settlement; that a Class Member may enter an appearance through an

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

attorney; and the binding effect of judgment on Class Members. *See* Haffner Decl., Exh. 7.

Class Members shall have 120 days from the day the Notices are mailed to file a Claim Form, opt out of the proposed settlement by submitting a Request for Exclusion, and/or submit an objection to the Settlement. Haffner Decl., Exh. 1 (Settlement Agreement) at Article I, Sections 7, 30; Article IV, Sections 5, 7 and 8.

### D. Attorneys' Fees And Litigation Expenses

At the time of the Final Approval Hearing, Plaintiff's counsel will request an award of attorneys' fees in an amount not to exceed one third of the settlement amount ($400,000), and actual litigation expenses in an amount not to exceed $20,000.[1] The parties did not discuss attorneys' fees until after an agreement was reached in principle with respect to the benefits of the Settlement, including the amount of monetary relief to the Class Members. Within the limitation of the Settlement Agreement, the actual amount of any fee and expense award will be in the discretion of the court, after Class Members have had an opportunity to object or otherwise state their opinions regarding this and every other aspect of the Settlement. In advance of the Final Approval Hearing, Plaintiff's counsel will submit detailed points and authorities and evidence in support of the requested attorneys' fees and expenses. Furthermore, any award of attorneys' fees and expenses is subject to Court approval to ensure that the award is fair, adequate, reasonable, and in accordance with applicable law.

## IV.   ARGUMENT

### A. Legal Standards For Preliminary Approval

The Court's review of a class action settlement requires a two-step process. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). First, the Court must determine whether to grant preliminary approval and order class

---

[1] Plaintiff notes that Haffner Law PC's current litigation expenses already exceed $20,000 as of the filing of this Motion.

notice. *Id*. Second, the Court must hold a fairness hearing to determine if the settlement is "fair, reasonable, and adequate." Fed. R. Civ.P. 23(e)(2). At the preliminary approval stage, this Court must determine whether the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080).

Additionally, to determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that will ultimately inform final settlement approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The proposed Settlement readily satisfies these standards.

**B. The Settlement Is Non-Collusive**

This settlement is entirely non-collusive. This action was resolved only after several years of vigorous litigation including the denial of Defendant's Motion for Summary Judgment and the certification of the Primary Class and Subclass. Throughout this action, the Parties engaged in mediation more than once. Haffner

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Decl., ¶¶10, 12.  The Parties ultimately reached the settlement of this action only with the assistance of a highly experienced mediator, Michael Young.  *Id.* ¶12.  For these reasons, the Settlement merits an initial presumption of fairness.  *See, e.g.*, *Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Due to the difficulty in identifying Class Members because of the lack of information as to what drivers hauled what Loads brokered to the Contract Carriers, the Parties negotiated a partial, claims-made process to apportion the Settlement based upon the Load information that Defendant does have. Single Truck Contract Carriers will be paid a Payment Per Load for each Load brokered to them (subject to the process described in Article III, Section B above if another driver submits a Claim Form related to any of those Loads), and drivers who believe they may be part of the Classes can file a Claim Form and supporting documentation regarding the Loads the driver hauled.

To guard against a situation where the claims process results in more Loads being claimed than Defendant brokered to Contract Carriers, the Settlement Agreement provides that Defendant will not pay more than the Gross Settlement Amount of $1,200,000 to satisfy all of its obligations under the Settlement, including all Settlement Payments to Class Members. Haffner Decl., Exh. 1, p. 4. In that instance, the Payment Per Load would be reduced proportionately. In the event not all the Loads were accounted for through payments to the Single Truck Contract Carriers or through the claims-made process, the Settlement Agreement provides that Defendant may retain any of the Net Settlement Amount that will not be distributed in that manner (Reversion Amount), subject to the requirement that Defendant pay at least 45% of the Net Settlement Amount to Class Members regardless of the claims rate (Minimum Payment to Class Members from Net Settlement Amount).  Haffner

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  Decl., Exh 1, p. 5.  The Settlement Agreement further provides that any uncashed

2  settlement checks will revert to Defendant.  Haffner Decl., Ex. 1, p. 30. The

3  reversionary clauses are not indicative of collusion, but are reasonable due to the

4  unique facts of this case.

5        Parties to a class action settlement can agree to a reversionary clause in their

6  settlement agreement where they "explain why the reversionary component of a

7  settlement negotiated…is consistent with proper dealing by class counsel and

8  defendants." *Roes, 1-2 v. SFBSC Management, LLC* 944 F.3d 1035, 1059 (9th Cir.

9  2019) (citing *In re Volkswagen,* 895 F.3d 895 F.3d 597, 612 (9th Cir. 2018)). Indeed,

10 this Court routinely approves settlements which retain revisionary clauses. *See Byrne*

11 *v. Santa Barbara Hospitality Services, Inc.*, 2018 WL 10483678, at *13-14 (C.D.

12 Cal. 2018); *Gonzalez v. BMC West, LLC*, 2018 WL 6318832, at *8 (C.D. Cal. 2018);

13 *Weinstein v. Mortgage Contracting Services, LLC*, 2018 WL 11377827 (Oct. 23,

14 2018); and *Moppin v. Los Robles Regional Medical Center*, 5:15-cv-01551-JGB-

15 DTB, ECF No. 49 (Feb. 13, 2017).

16       Here, as in other similar settlements this Court has approved, the Parties reached

17 the Settlement after two formal mediations with mediator, Michael Young, who has

18 substantial experience settling wage and hour class actions. Haffner Decl., 12. *Byrne*,

19 2018 WL 1043678 at *13; *Gonzalez*, 2018 WL 6318832 at *8 ("The use of a mediator

20 experienced in the settlement process tends to establish that the settlement process was

21 not collusive" (citations omitted)).

22 **C. The Settlement Does Not Grant Improper Preferential Treatment To the**

23 **Class Representative Or Other Segments Of The Classes**

24       The Settlement does not grant improper preferential treatment to the Class

25 Representative or to any segment of the Primary Class or Subclass.  As discussed

26 below, the plan of allocation is structured to reflect the relative strength of and

27 likelihood of recovery on the claims alleged by the different Classes.

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

1    The Settlement recognizes the efforts of the named plaintiff without granting

2    improper preferential treatment.  The Settlement provides for Class Representative an

3    Incentive Award in the amount of up to $10,000.  Haffner Decl., Exh. 1, p. 14.  Courts

4    routinely approve service awards to compensate named plaintiffs for the work done on

5    behalf of the class, the risks they incurred during the course of the class action

6    litigation, and sometimes, to recognize their willingness to act as a private attorney

7    general.  *See, e.g.*, *Quiruz*, 2020 WL 6562334, at *11 (citing *Rodriguez v. West Publ'g

8    Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)).  The proposed award is consistent with

9    amounts commonly awarded in district courts in the Ninth Circuit.  *See, e.g.*, *Quiruz*,

10   2020 WL 6562334, at *11 (approving $10,000 class representative service award);

11   *Spann v. J.C. Penney Corp.*, 211 F.Supp.3d 1244, 1265-66 (C.D. Cal. 2016) (same);

12   *Dyer*, 303 F.R.D. at 335 (same); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245,

13   267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000.").

14   Moreover, as will be set forth in detail in declarations to be submitted in connection

15   with Plaintiff's final approval motion, the proposed service award compensates

16   Plaintiff for his time, effort, and risks undertaken for the payment of costs in the event

17   the action had been unsuccessful, possible retaliation or reputational harm in the

18   industry, and for the provision of his general release.

19   The total value of the service award is a minuscule fraction -- eight one-

20   hundredths of 1% -- of the gross settlement value, *see, e.g.*, *In re On-Line DVD Rental

21   Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving service awards

22   comprising in the aggregate less than 1% of the gross settlement value).

23   **D. The Settlement Falls Within The Range Of Possible Approval**

24   "To evaluate the range of possible approval criterion, which focuses on

25   substantive fairness and adequacy, courts primarily consider plaintiffs' expected

26   recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley*

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

1    *Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware*
2    *Antitrust Litig.*, 484 F.Supp.2d at 1080).

3        In negotiating the Settlement, Plaintiff made the following approximate
4    valuation of each meal break, rest break, and minimum wage claim. Based on
5    discovery and load information disclosed by Defendant in advance of mediation,
6    Plaintiff determined that there were approximately 122,689 Loads that may have been
7    driven by Class Members and Defendant brokered those Loads to approximately 2,590
8    Contract Carriers.

9        The Primary Class was only certified as to meal break claims, and the Subclass
10   was certified as to minimum wage and rest period claims. Haffner Decl., Exh. ___.
11   Although Defendant contends that the meal and rest break claims have since been
12   preempted, and thus have minimal value (See *Int'l Bhd. of Teamsters, Loc. 2785 v.*
13   *Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 858 (9th Cir. 2021)), Plaintiff's argue
14   that preemption may not apply to purely intrastate loads, and some of the loads may be
15   purely intrastate loads. There is also value because Defendant would have to incur costs
16   to adjudicate that the meal and rest break claims here are preempted.

17       Plaintiff estimates the valuation of the meal and rest break claims as follows:
18   122,689 loads times Meal Break penalty of $100 is $12,268,900. Plaintiff then
19   estimates that these claims have a 5% likelihood of success. As a result, Plaintiff
20   estimates that the meal break and rest break claims are valued at $613,445.

21       Plaintiff's rest break claim for the Subclass is based on minimum wage for rest
22   breaks taken but not paid, which is the claim that was certified.  Haffner Decl., Exh. 8,
23   p. 5. The Parties are unable to determine what Loads were hauled by Primary Class
24   Members and what Loads were hauled by Subclass Members. For minimum wage
25   damages for the Subclass, Plaintiff estimated that Subclass Members drove 80% of the
26   intrastate loads, which is 98,151 loads. Plaintiff further estimated that each Subclass
27   Member spent at least two hours of non-productive time for each Load. Thus, 98,151

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

loads multiplied by two hours per Load results in 196,302 hours of time. Based on California's minimum wage at the time of approximately $10 per hour, the Subclass damages for the minimum wage claim are at least $1,963,020, for uncompensated time worked in California. Further, based on Labor Code §1194.2, "an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."  Thus, penalties of liquidated damages in the same amount of $1,963,020 are potentially due to the class, for total damages and penalties potentially owed to the class in the amount of $3,926,040.

Additionally, for Plaintiff's rest break claim, neither Party has any information to determine whether a driver took one rest break, two rest breaks or no rest breaks at all on any particular Load. To apportion the Settlement, Plaintiff conservatively estimated that each load was only in California for one day and for a maximum of eight (8) hours. If a driver did not take a rest break, there are no potential damages; if a driver took two rest breaks, this means 20 minutes' worth of wages is potentially owed for each load hauled by Subclass Members at an estimated $20 per hour. Plaintiff further estimated that drivers took 50% of the rest breaks they may have been entitled to under California law on these Loads.  Assuming Subclass members drove 80% of the Loads, which is 98,151 loads, at $6.67 per load ($20 dollars per hour/3), on 50% of the Loads, the total rest break damages are at least $327,333.59.

Therefore, Plaintiff's total valuation of the case is approximately $4,866,818.59. Plaintiff's gross settlement value of $1,200,000 represents a recovery of over 24% of Plaintiff's total valuation for the case.

Plaintiff's settlement must also be examined in light of Defendant's numerous defenses related to the risk that the Classes may be decertified and the merits of the case. Litigation of those issues would consume substantial time and resources, and there is a risk that Defendant would prevail on one or more of such defenses and negate all of Plaintiff's certified claims.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

In particular, Defendant maintains that on January 1, 2020, after the Court granted Plaintiff's motion for class certification, California enacted a Business-to-Business Exemption to the ABC test. Cal. Labor Code § 2776. Under the exemption, the ABC test announced in *Dynamex Operations W. v. Superior Court*, 4 Cal.5th 903 (2018) and codified in Labor Code section 2775 does not apply to "a bona fide business-to-business contracting relationship." Cal. Labor Code § 2776. Defendant contends that it can satisfy all of the exemption requirements for Plaintiff individually. Defendant further contends that each of the exemption factors requires consideration of individualized evidence from each Class Member. As a result, Defendant contends that the Court would likely decertify Plaintiff's claims.

Additionally, Defendant argues that California's meal and rest break laws are preempted by federal transportation law. *Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 858 (9th Cir. 2021) (upholding December 21, 2018, decision by the Federal Motor Carrier Safety Administration (FMCSA)). As a result, Plaintiff's meal break claim will fail as a matter of law for the entire class period that dates back to 2013. *Id.; Valiente v. Swift Transport. Co. of Az.*, 54 F. 4th 581, 586-87 (9th Cir. 2022) (determining that FMCSA's preemption decision bars plaintiffs from proceeding with break claims in lawsuits that commenced prior to the FMCSA's decision).

Defendant also contends that the FMCSA's preemption determination likewise defeats Plaintiff's claim for unpaid rest breaks. The only breaks required to be compensated under Section 226.2 are the "rest and recovery period[s] mandated pursuant to a state law." Cal. Labor Code § 226.2 ("(1) Employees shall be compensated for rest and recovery periods . . . separate from any piece-rate compensation."); *see* Cal. Lab. Code § 226.7(d) ("A rest or recovery period mandated pursuant to a state law, including, but not limited to, an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   Safety and Health Standards Board, or the Division of Occupational Safety and Health,

2   shall be counted as hours worked, for which there shall be no deduction from wages.").

3   Because Defendant did not have to provide paid rest breaks in the first place, Plaintiff's

4   paid rest break claim also fails as a matter of law.

5       Defendant further argues that, even if Plaintiff's rest break claim was not

6   preempted, Plaintiff cannot prove this claim with common classwide evidence, and the

7   claim would be decertified. Plaintiff alleged in his Complaint (Par. 43) that he and the

8   class were "routinely" required to work through rest breaks. Because there is no record-

9   keeping requirement for rest breaks, Plaintiff will bear the burden of proving when he

10  and the class took rest breaks. Defendant contends the difficulty in identifying when

11  rest breaks were and were not taken requires testimony from each driver regarding each

12  load and will ultimately cause the claim to be decertified. *Bowerman v. Field Asset

13  Servs., Inc.*, Nos. 18-16303, 18-17275, 2023 WL 2001967 at *7 (9th Cir. Feb. 14, 2023)

14  (District Court abused its discretion in certifying class "because complex,

15  individualized inquiries would be needed to establish that class members worked

16  overtime or that claimed expenses were reimbursable");  *Olean Wholesale Grocery

17  Coop., Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651, 663 (9th Cir. 2022) (In "contrast"

18  to a question of law or fact common to the class that supports certification under Rule

19  23, "an individual question is one where members of a proposed class will need to

20  present evidence that varies from member to member." (citation omitted)).

21      Similarly, Defendant contends that Plaintiff's minimum wage claim for

22  allegedly uncompensated work time will be decertified and is substantively without

23  merit. Defendant paid Contract Carriers by the Load but Plaintiff argues that it did not

24  compensate them for all work activities.  Defendant asserts that the payment per Load

25  is lawful and provides full compensation to the Contract Carriers.

26      Defendant argues that recent California Supreme Court and Ninth Circuit

27  decisions support this position. In *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762 (2020),

28

14

1    the California Supreme Court confirmed that "compensation owed employees is a

2    matter determined primarily by contract . . . [c]onsistent with general contract

3    interpretation principles, the unit for which the pay is promised should be determined

4    based on the 'mutual intention of the parties as it existed at the time of contracting.'"

5    *Id*. at 782. The Ninth Circuit subsequently confirmed that, based on *Oman*, load pay

6    can compensate non-driving tasks consistent with Section 226.2 and California law.

7    *Ayala v. U.S. Xpress Enters., Inc.*, 851 Fed. Appx. 53, 54 (9th Cir. 2021) (quoting

8    *Oman* and concluding "[S]ection 226.2 permits an employer and its employees to

9    define the scope of its piece-rate compensation system"). Therefore, Defendant

10   contends, even assuming the Contract Carriers load pay constitutes "piece-rate

11   compensation" under Section 226.2, the Contract Carriers agreed the load pay was "all-

12   inclusive", and the policy complies with California law.

13       Alternatively, Defendant argues that the minimum wage claim will be

14   decertified because it would require individualized testimony from each driver

15   regarding the tasks completed on each Load to determine if any tasks were not

16   compensated by the load pay. Under *Bowerman* and *Olean*, Defendant contends that

17   these highly individualized inquiries will require decertification of the minimum wage

18   claim.

19       If Defendant was to prevail on its decertification arguments or on the merits in

20   this Court or on appeal, the Class Members might receive nothing or significantly less

21   than what is presented here. Plaintiff believes that the Settlement is reasonable in light

22   of the uncertainty and expense of continued litigation and the substantial benefits the

23   Settlement affords to the Classes. The Class Members will receive payments

24   compensating them for the alleged certified wage and hour violations resulting from

25   their time working for Defendant. Therefore, the proposed Settlement is within the

26   "realistic range of outcomes" of litigation. *Bellinghausen v. Tractor Supply Company,*

27   303 F.R.D. 611, 623-624 (N.D. Cal. 2014) (finding settlement amount of a wage and

28

15

1    hour class action that equaled between 9% and 27% of the total potential liability to be

2    fair, adequate and reasonable given the uncertainty of continued litigation); *In re*

3    *Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008) (9%

4    settlement of potential damages award given to class members acceptable).

5        **E. The Settlement Has No Obvious Deficiencies**

6        A court should also consider possible deficiencies in a settlement including, for

7    example, issues surrounding the release of claims, the notice plan, the plan of

8    allocation, and a request for attorneys' fees. *See Custom LED, LLC v. eBay, Inc.*,

9    2013 WL 6114379, at *7-8 (N.D. Cal. Nov. 20, 2013); *Deaver v. Compass Bank*,

10    2015 WL 4999953, at *7 (N.D. Cal. Aug. 21, 2015).

11        **1.    Release**

12        Releases in class settlements should be approved when claims released by

13    unnamed class members are limited to those related to the conduct alleged in the

14    complaint.  *Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030, 1038 (N.D. Cal. 2016) ("What

15    matters is whether the released claims arise from the same facts as those alleged in

16    the lawsuit, and whether the settlement as a whole is reasonable in light of the

17    strength and value of all the claims being released."). *See also Kutzman v. Derrel's*

18    *Mini Storage, Inc.*, Case No. 1:18-cv-00755 AWI-JLT, 2020 WL 406768 at *14-15

19    (E.D. Cal. Jan. 24, 2020) ("Class action settlement agreements cannot release claims

20    of absent class members that are unrelated to the factual allegations of the class

21    complaint" but "commonly release concealed or hidden claims related to the facts

22    alleged.")(citing *Hesse v. Sprint Corp*., 598 F.3d 581, 590 (9th Cir. 2010) and *In re*

23    *Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.,* 2017 WL

24    22212780, at *8 (N.D. Cal. May 17, 2017) aff'd, 746 F.App'x 655 (9th Cir. 2018)).

25        The scope of the Released Claims here follows the above parameters, as it is

26    limited to claims based on or reasonably related to the claims asserted in the Action.

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

## 2.    Notice Plan

Under Fed. R. Civ. P. 23(c)(2)(B), a class notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Class members are entitled to the best notice practicable, reasonably calculated under the circumstances to apprise him or her of the pendency of the class action. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994).

Here, the proposed Notice is easy to read and includes all information necessary for Class Members to decide whether to participate in the Settlement, file a Claim Form, opt-out, or object during the 120-day notice period. Haffner Decl., Exh. 1, p. 25.  The Settlement provides that a Notice of Settlement will be sent to Contract Carriers via first-class U.S. Mail and/or email/text, if an email address or cell phone number was provided by Defendant. Haffner Decl., Exh. 1, p. 17. Any returned envelopes containing the Notice from this mailing with forwarding addresses will be used by the Settlement Administrator to locate Class Members. *Id*. In the event prior to the Opt-Out Deadline, any Notice mailed to a Contract Carrier or a Class Member identified during the claims process is returned to the Settlement Administrator as having been undelivered by the U.S. Postal Service, the Settlement Administrator shall perform a skip trace search and seek an address correction for such Contract Carrier, and a second Notice will be sent to any new or different address obtained. *Id*.

Additionally, the Parties have agreed that the Notice will be published in publications that the Parties have determined are disseminated regularly to or among individuals who could be a Class Member in this case, including, but not limited to,

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   The Trucker, Overdrive Magazine, Fleet Owner, Road King, and American Trucker.

2   Haffner Decl., Exh. 1, p. 19. The Settlement Administrator will also create a website

3   for the Settlement which will allow Class Members to view the Notice and obtain a

4   Claim Form. Haffner Decl., Exh. 1, p. 20.

5       This notice plan is an efficient, effective, and cost-efficient way to provide

6   notice of the settlement to Class Members. Because the Parties lack information

7   regarding the identity of and contact information for all potential Class Members, the

8   notice process described above is reasonable and designed to provide the best notice

9   possible under these circumstances.

10   **F. The Settlement Is Fundamentally Fair, Adequate, And Reasonable**

11       The Settlement is fundamentally fair, adequate, and reasonable based on the

12   following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense,

13   complexity, and likely duration of further litigation; (3) the risk of maintaining class

14   action status throughout the trial; (4) the amount offered in settlement; (5) the extent

15   of discovery completed and the stage of the proceedings; (6) the experience and views

16   of counsel; (7) the presence of a governmental participant; and (8) the reaction of class

17   members to the proposed settlement.  See *Churchill Village, LLC v. Gen. Elec.*, 361

18   F.3d 566, 575 (9th Cir. 2004).

19   **1.    Strength Of Plaintiff's Case**

20       The initial fairness factor addresses Plaintiff's likelihood of success on the

21   merits. See *Rodriguez v. West Publ'g Corp.* 563 F.3d 948, 964-965 (9th Cir. 2009).

22   To determine the probability of Plaintiff's success on the merits, there is no

23   "particular formula by which that outcome must be tested." *Id*. at 965.

24       Here, Plaintiff survived Defendant's motion for summary judgment. Haffner

25   Decl., Exh. 6. However, as noted above, Plaintiff recognizes Defendant has factual

26   and legal defenses which present obstacles to prevailing at trial. Because the

27   Settlement represents a significant recovery for the Classes, particularly in view of

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

the challenges Plaintiff would likely face in this litigation going forward, this factor

weighs in favor of approval. See *Barbosa v. Cargill Meat Solutions Corp.* 1:11-CV-

00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. 2013) ("Plaintiffs' likelihood of

success appears to have been properly accounted for in the settlement amount.").

## 2. Risk, Expense, Complexity, And Likely Duration Of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further

litigation, the Court evaluates the time and cost required. "[U]nless the settlement is

clearly inadequate, its acceptance and approval are preferable to lengthy and

expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop., supra,*

221 F.R.D. at 526 (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

As discussed above, Defendant continues to contest liability. Defendant

contends that based on new case law, it would attempt to decertify the class, as well

as litigate the ultimate merits of the case – which would be a long, complex, and

expensive process. Therefore, the settlement avoided further protracted and

expensive litigation. Accordingly, this factor weighs in favor of settlement approval.

## 3. Risk Of Maintaining Class Action Status Throughout The Trial

Although the Court has granted, in part, Plaintiff's motion for class

certification, Defendant has indicated that absent the settlement, it would move to

decertify the class. Defendant argues that California enacted a Business-to-Business

Exemption to the ABC test. Cal. Labor Code § 2776. Under the exemption, the ABC

test announced in *Dynamex Operations W. v. Superior Court*, 4 Cal.5th 903 (2018)

and codified in Labor Code section 2775 does not apply to "a bona fide business-to-

business contracting relationship." Cal. Labor Code § 2776. Defendant contends that

it can satisfy all of the exemption requirements for Plaintiff individually. Defendant

further contends that each of the exemption factors requires consideration of

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

individualized evidence from each Class Member. As a result, Defendant contends that the Court would likely decertify Plaintiff's claims.

Although Plaintiff disputes Defendant's argument that the class would be decertified based on the Business-to-Business exemption, there is some risk of maintaining class action status throughout the trial, and this factor weighs in favor of approving the settlement.

### 4.     Amount Offered In Settlement

Through mediation, Plaintiff projected the Class's total damages as $4,866,818.29. The settlement amount, $1,200,000, is slightly less than one-fourth the potential recovery, which, considering the challenges and uncertainties of the case, is fair and adequate. See *Linney v. Cellular Alaska Partnership* 151 F.3d 1234, 1242 (9th Cir. 1998) ("'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" (quoting *City of Detroit v. Grinnell Corp.* 495 F.2d 448, 455 n. 2 (2nd Cir. 1974))). Given the potential defenses Defendant could put forward, including an argument against class certification, the amount offered here is appropriate.

### 5.     Extent Of Discovery Completed And The Stage Of The Proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney, supra,* F.3d at 1239.

Here, the parties have conducted formal and informal discovery, multiple depositions, a contested class certification motion, a motion for summary judgment, two full-day mediations, as well as investigation and evaluation of the claims of Plaintiff by the parties. Haffner Decl., ¶18.  Based on the review of the documents produced in this case, written discovery, and the information Defendant provided

prior to mediation, the parties believe they have enough evidence to evaluate the

strength and weaknesses of the case. Therefore, this factor favors settlement. See

*Nat'l Rural Telecomms. Coop., supra,* 221 F.R.D. at 527 ("A court is more likely to

approve a settlement if most of the discovery is completed because it suggests that

the parties arrived at a compromise based on a full understanding of the legal and

factual issues surrounding the case.") (quoting 5 Moore's Federal Practice,

§ 23.85[2][e] (Matthew Bender 3d ed)).

### 6.    Experience And Views Of Counsel

In considering the adequacy of the terms of a settlement, the trial court is

entitled to, and should, rely upon the judgment of experienced counsel for the parties.

See *Nat'l Rural Telecomms. Coop., supra,* 221 F.R.D. at 528 ("Great weight is

accorded to the recommendation of counsel, who are most closely acquainted with

the facts of the underlying ligation[.]") (internal quotation marks and citations

omitted). This reliance is predicated on the fact that "[p]arties represented by

competent counsel are better positioned than courts to produce a settlement that fairly

reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec.

Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel has extensive experience serving as class counsel in wage and

hour litigation actions in federal and state court. See Haffner Decl., ¶¶14-16. Class

Counsel believes, on balance, the settlement is fair, reasonable, and adequate,

representing a good result for the class after handicapping the likely odds of

prevailing on the merits. As a result, the experience and views of Class Counsel also

weigh in favor of approval.

Moreover, settlements are afforded a presumption of fairness if the

negotiations occurred at arm's length. 4 Newberg on Class Actions § 11.41 (4th ed.

2013). Here, the Settlement was reached through the efforts of counsel following a

mediation conducted by experienced mediator Michael Young, who has substantial

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

experience in labor and employment litigation.

### 7.   Presence Of A Governmental Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 8.   Opposition By Class Members

This factor cannot be evaluated until the Class Members receive the Notice and are given an opportunity to object to or opt out of the Settlement.

Therefore, the Settlement is fundamentally fair, adequate, and reasonable under the circumstances.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the proposed Settlement as set forth in the [Proposed] Order submitted herewith; order notice to be distributed as set forth in the Order; and set a schedule for further settlement approval proceedings and a final approval hearing.

DATED:  March 1, 2023                **HAFFNER LAW PC**

By: /s/ Trevor Weinberg
Joshua H. Haffner
Trevor Weinberg
*Attorneys for Plaintiff*

22