UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-2489 JGB (KKx)** | Date | April 28, 2023 |
|---|---|---|---|
| Title | *Carlos Moreno v. JCT Logistics, Inc., et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 98); and (2) VACATING the May 1, 2023 Hearing (IN CHAMBERS)

Before the Court is a motion for preliminary approval of class action settlement filed by Plaintiff Carlos Moreno on behalf of the certified classes. ("Motion," Dkt. No. 98.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court **GRANTS** the Motion and **VACATES** the May 1, 2023 hearing.

## I. BACKGROUND

On July 14, 2017, Plaintiff Carlos Moreno ("Plaintiff" or "Moreno") filed an amended class action complaint against Defendants JCT Logistics, Inc., John Christner Trucking, LLC, John Christner Trucking, Inc., and Does 1 through 10 (collectively, "Defendant" or "JCT") in the Superior Court of the State of California, County of San Bernardino. ("FAC," Dkt. No. 3-1.) Plaintiff's cases arises from Defendant's alleged misclassification of its truck drivers as independent contractors. (Id. ¶ 1.) In his FAC, Plaintiff asserts seven causes of action: (1) failure to provide meal periods; (2) failure to provide rest breaks; (3) failure to pay minimum wages; (4) failure to furnish timely and accurate wage statements; (5) failure to pay all wages owed every pay period; (6) failure to reimburse business expenses; and (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq. (See id.) Defendant removed the case to this Court on December 13, 2017. ("Notice of Removal," Dkt. No. 3.)

On January 8, 2019, the Court denied Defendant's motion for summary judgment. ("Summary Judgment Order," Dkt. No. 55.) On May 29, 2019, the Court granted-in-part Plaintiff's motion for class certification. ("Class Certification Order," Dkt. No. 64.) The Court certified the entire class as to the meal period claim and the subclass as to the minimum wage and rest period claims. (See id.) On February 18, 2020, the Court granted-in-part and denied-in-part Plaintiff's motion to approve class notice. ("Class Notice Order," Dkt. No. 82.)

On March 3, 2020, the Court granted the parties' joint stipulation to stay the action pending the outcome of three cases in the California Supreme Court and the Ninth Circuit Court of Appeals. (Dkt. No. 84.) On July 8, 2022, the Court lifted the stay in the action. (Dkt. No. 91.)

On March 1, 2023, Plaintiff filed this Motion. (Motion.) In support of the Motion, Plaintiff filed a declaration of Joshua H. Haffner ("Haffner Decl.," Dkt. No. 98-1, at 1–7) with attached exhibits ("Exs. 1–7," Dkt. No. 98-1, at 8–166) and a proposed order ("Proposed Order," Dkt. No. 98-2). On March 14, 2023, Defendant filed a declaration of Angela S. Cash ("Cash Decl.," Dkt. No. 101) regarding service of Defendant's Class Action Fairness Act ("CAFA") Settlement Notice ("CAFA Notice," Dkt. No. 101-1.) On the same day, Defendant also filed a notice of non-opposition to the Motion. (Dkt. No. 102.)

## II. LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014). A court may certify a class if the plaintiff demonstrates that the class meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. See Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure, unless otherwise noted.

Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

### III. SETTLEMENT AGREEMENT

The parties have agreed, subject to the Court's approval following notice to the Class Members and a fairness hearing, to settle this action for the Gross Settlement Amount of $1,200,000 and upon the terms and conditions set forth in the Joint Stipulation of Settlement and Release of Class Action Claims ("Settlement Agreement"). (Ex. 1.) The Court incorporates by reference the definitions provided in the Settlement Agreement; all terms defined therein shall have the same meaning in this Order.

**A. Class Members**

The Court previously certified Plaintiff's proposed Primary Class and Subclass. (See Motion at 2; Class Certification Order at 7.) The Primary Class is defined as:

> All current and former California residents who submit a valid Claim Form and who drove for Defendant John Christner Trucking, LLC (JCT) intrastate pursuant to a contract-carrier agreement at any time from July 6, 2013 through the date the Court enters preliminary approval of this settlement (Class Period).

(Motion at 2.) The Subclass is defined as:

> All current and former California residents who individually, or on behalf of a company they owned, entered into a contract-barrier agreement with JCT and drove California intrastate loads brokered by JCT to the Contract Carrier at any time during the Class Period.

(Id. at 3.) For purposes of settlement, the Court finds that the prerequisites for a class action under Rule 23(a) and 23(b)(3) have been preliminarily satisfied for the same reasons set forth in the Class Certification Order. (See Class Certification Order at 7–28.)

The Class Period is defined as July 6, 2013 through the date the Court enters preliminary approval of the settlement. (Motion at 3.) The Class Period reaches back four years before the date Plaintiff filed his complaint. (Id.)

The parties have determined that as of August 2022, there were approximately 122,689 intrastate loads ("Loads") that may have been driven by Class Members and that Defendant brokered Loads to approximately 2,590 third-party carriers ("Contract Carriers"). (Id.) Of the 2,590 Contract Carriers, Defendant believes that approximately 833 had only one truck under contract ("Single Truck Contract Carriers"). (Id. at 5.)

**B. Monetary Relief**

The Gross Settlement Amount is $1,200,000. (Id. at 3.) Attorneys' fees will be up to $400,000, or one-third of the Gross Settlement Amount. (Id.) Attorneys' costs will be up to $20,000. (Id.) Plaintiff's incentive award will be up to $10,000, and settlement administration costs will be up to $40,000. (Id.) These fees, costs, and incentive award will be subtracted from the Gross Settlement Amount to calculate the Net Settlement Amount. (Id.) The Settlement Administrator will divide the Net Settlement Amount by the total number of Loads to calculate a payment per load ("Payment Per Load") that will form the basis of the settlement payouts. (Id.) At least 45 percent of the Net Settlement Amount is non-reversionary to the Defendant. (Id.)

Single Truck Contract Carriers are presumed to be Subclass Members and will be eligible to receive the Payment Per Load for all Loads that Defendant's records show were brokered to that Single Truck Contract Carrier without filing a Claim Form. (Id. at 4.) These payments will be based on the presumption that the owner of a Single Truck Contract Carrier was the individual who drove the Loads. (Id.) However, if a Primary Class Member submits a Claim Form relating to Loads brokered to a Single Truck Contract Carrier, the Settlement Administrator will notify that Single Truck Contract Carrier of the need to submit a Claim Form so the parties and the Settlement Administrator can resolve the competing claims for those Loads and make a final determination as to how the settlement related to those Loads should be paid. (Id.)

**C. Class Notice**

A Notice of Settlement will be sent via first-class U.S. Mail to all Contract Carriers to which Defendant brokered Loads during the Class Period. (Id.) If Defendant can locate an email address or a mobile phone number for a Contract Carrier, a Notice of Settlement will also be sent via email or text message. (Id.) In the event any Notice mailed to a Contract Carrier is returned as undeliverable by the U.S. Postal Service, the Settlement Administrator will perform a skip trace to find a new address, and a second Notice will be sent to any new address. (Id. at 4–5.) Contract Carriers who are not Single Truck Contract Carriers will be asked to post the Notice of Settlement at their place of business. (Id. at 4.)

In addition, the parties will publish the Notice in publications targeted to reach potential Class Members, including, but not limited to, The Trucker, Overdrive Magazine, Fleet Owner, Road King, and American Trucker. (Id. at 5.) The Settlement Administrator will also create a website to allow potential Class Members to view the Notice and obtain a Claim Form. (Id.)

Pursuant to Rule 23, the Notice of Settlement will include information concerning the nature of the lawsuit; the release; the definitions of the Classes; the claims, issues, and defenses; the process for filing a Claim Form; that Class Members may opt out or object to the settlement; that a Class Member may enter an appearance through an attorney; and the binding effect of a judgment on Class Members. (Id. at 5–6.) Class Members shall have 120 days from the day the Notices are mailed to file a Claim Form, opt out of the settlement by submitting a Request for Exclusion, and/or file an objection to the settlement. (Id. at 6.)

### D. Attorneys' Fees and Costs

The Settlement Agreement provides that Plaintiff's counsel shall apply for an award of attorneys' fees in an amount not to exceed $400,000, or one-third of the Gross Settlement Amount, and an award of costs not to exceed $20,000. (Id.) In advance of the Final Approval Hearing, Plaintiff's counsel will submit points and authorities and evidence in support of the requested attorneys' fees and costs. (Id.) Within the limitation of the Settlement Agreement, the actual amount of any fees and costs award will be in the discretion of the Court.

### E. Class Representative

The Agreement provides for an incentive award of up to $10,000 to Plaintiff from the Gross Settlement Amount. (Id. at 3.)

### F. Settlement Administration

The parties request that the Court appoint CPT Group, Inc., as the Settlement Administrator. (Proposed Order ¶ 7.)

### G. Opt-Out and Objection Procedures

Class Members, other than Plaintiff, who wish to opt out of the settlement must mail or email a written Opt-Out Request to the Settlement Administrator no later than 120 days after the mailing of the Notices ("Opt-Out Deadline"). (Ex. 1 at 24.) To be valid, any Opt-Out Request must be completed and received by the Settlement Administrator with a postmark date of on or before the Opt-Out Deadline. (Id.) Any Class Member who submits a valid Opt-Out Request shall not be considered a member of the Class or Subclass, shall be barred from participating in the settlement, and shall receive no benefit from the settlement.

The Class Notice shall inform Class Members of their right to object to the settlement. (Id.) Any Class Member who wishes to object to the settlement must file and deliver a written Objection to the Court and serve copies of the written Objection to both Plaintiff's counsel and Defendant's counsel no later than the Opt-Out Deadline. (Id.)

//
//

### H. Release

Each Class Member who does not opt out will fully forever, irrevocably, and unconditionally release and discharge all Released Claims, as defined in the Settlement Agreement, that were brought or could have been brought against the Released Parties based on the facts alleged in the Complaint. (Proposed Order ¶ 13.) The Released Claims include any and all wage and hour claims under federal and state law that were brought or could have been brought in this case based on the facts alleged in the Complaint, as further defined in the Settlement Agreement, as well as the provisions, rights, and benefits of California Civil Code § 1542. (Id.) Class Members will release such Released Claims for the time period from July 6, 2013 through the date of this Order. (Id.)

## IV. PRELIMINARY APPROVAL

Rule 23 "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998), overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011). To do so, courts consider several factors, including the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton, 327 F.3d at 959. Moreover, the settlement may not be a product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, at *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy favoring settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits and the range of possible recovery. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). To determine the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965. The Court may presume that, through negotiation, the parties, their counsel, and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. See Rodriguez, 563 F.3d at 965

("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . .").

Here, Plaintiff acknowledges that "Defendant has factual and legal defenses which present obstacles to prevailing at trial." (Motion at 18.) In particular, Defendant argues that California's meal and rest break laws are preempted by federal law, and that after the Court certified the Classes, California enacted a business-to-business exemption which would support decertification. (See id. at 12–16.) In view of the challenges Plaintiff would likely face in this litigation going forward, the settlement represents a significant recovery for the Classes and this factor weighs in favor of approval. See, e.g., Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 445–46 (E.D. Cal. 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.").

### B.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004). Here, Defendant continues to contest liability. (Motion at 19.) Absent a settlement, Defendant intends to move to decertify the Classes based on new case law, as well as litigate the merits of the case—"which would be a long, complex, and expensive process." (Id.) Given the risks and further expenses for all parties, as well as the potential for protracted litigation, this factor weighs in favor of approval.

### C.  The Risk of Maintaining Class Action Status Throughout Trial

As discussed above, Defendant has indicated that it will move to decertify the Classes based on new case law. (Id.) Defendant contends that California enacted a business-to-business exemption to the ABC test established in Dynamex Operations W. v. Superior Court, 416 P.3d 1 (Cal. 2018) and codified in California Labor Code Section 2775. (Id.) Under the exemption, the ABC test does not apply to "a bona fide business-to-business contracting relationship." Cal. Lab. Code § 2776. Defendant argues that it can satisfy the exemption requirements for Plaintiff individually, and that consideration of the exemption requirements will require individualized evidence from each Class Member. (Motion at 19–20.) As a result, Defendant claims that the Court would likely decertify the Classes. (Id. at 20.) Although Plaintiff disputes this, Plaintiff recognizes that "there is some risk" of maintaining class action status throughout trial. (Id.) Thus, this factor weighs in favor of approval.

### D.  Amount Offered in Settlement

To determine whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459. Here, Plaintiff estimates that the Class's total damages is $4,866,818.29. (Motion at 20; see also id. at 11–12 (calculations).) The Gross Settlement Amount of $1,200,000 is slightly less than one-quarter (over 24%) of the potential

recovery. (Id. at 12, 20.) The Court finds that the Gross Settlement Amount constitutes a reasonable percentage of the estimated damages recoverable at trial. See, e.g., Ontiveros v. Zamora, 303 F.R.D. 356, 370–71 (E.D. Cal. 2014) (approving a net settlement amount of $1.1 million out of 3 to 4 million in total potential liability in a wage-and-hour case); Bellinghausen v. Tractor Supply Co., 303 F.R.D. 611, 623–24 (N.D. Cal. 2014) (preliminarily approving a settlement amount of between 9 and 27 percent of the total potential liability in a wage-and-hour case). This factor weighs in favor of approval.

### E.  Extent of Discovery and Stage of the Proceedings

To receive settlement approval, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (alterations in original) (internal quotation marks omitted). Here, the parties have vigorously litigated the action for over several years, and they reached this settlement with the assistance of a highly experienced mediator, Michael Young. (Haffner Decl. ¶ 12.) The parties did not settle until they had briefed class certification and summary judgment motions. (Motion at 20.) The parties had also engaged in substantial discovery, including the production of documents, written discovery, and multiple depositions. (Id. at 20–21.) Because "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528, this factor weighs in favor of approval.

### F.  Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528 (internal quotation marks omitted). Here, Plaintiff's counsel has extensive experience serving as class counsel in wage-and-hour actions in federal and state court. (Haffner Decl. ¶¶ 14–16.) Plaintiff's counsel believes "the settlement is fair, reasonable, and adequate, representing a good result for the class" with respect to "the likely odds of prevailing on the merits." (Motion at 21.) Thus, this factor therefore weighs in favor of preliminary approval.

### G.  Presence of a Governmental Participant

There is no governmental participant in this action. (Id. at 22.)

### H.  Reaction of Class Members

This factor cannot be evaluated until the Class Members are provided the Notices and an opportunity to opt out or object to the settlement.

//
//
//

I.  Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

Here, the settlement negotiations were conducted at arms-length with the assistance of a highly experienced mediator, Michael Young. (Haffner Decl. ¶ 12.) The "use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive." Woodard v. Labrada, 2019 WL 4509301, at *10 (C.D. Cal. Apr. 23, 2019).

The Court next evaluates the settlement's financial terms. Plaintiff requests an incentive award of $10,000. (Motion at 10.) A court may grant a modest incentive award to a class representative, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego, 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives); Rodriguez, 563 F.3d at 958 (finding incentive awards discretionary). "Incentive awards typically range from $2,000 to $10,000." Bellinghausen, 306 F.R.D. at 267. Here, although the requested incentive award is on the higher end of what courts have approved, it is less than 1 percent of the Gross Settlement Amount. See, e.g., Sandoval v. Tharaldson Emp. Mgmt., Inc., 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (approving incentive award of $7,500, which constituted 1% of the gross settlement). The Court finds that the requested incentive award is *potentially* reasonable. The Court may not grant the award in full should it approve the settlement. In advance of the Final Approval Hearing, Plaintiff shall submit evidence in support of the requested incentive award, such as time spent participating in the litigation.

As for attorneys' fees, Plaintiff's counsel requests an award of up to $400,000, or one-third of the Gross Settlement Amount. (Motion at 3.) The Ninth Circuit has found that a benchmark of 25% of the common fund is a reasonable attorneys' fee award. Hanlon, 150 F.3d at 1029. The Court, in its discretion, may award attorneys' fees in a class action by applying either the percentage-of-the-fund method or the lodestar method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation. See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).

Here, Plaintiff's counsel's requested fee award is high. However, a fee award of 33% of the common fund is within the realm of possibility. Cf. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945 (9th Cir. 2011). The Court finds that the requested attorneys' fee award is *potentially* reasonable. The Court may not grant the award in full should it approve the settlement. In advance of the Final Approval Hearing, Plaintiff's counsel shall submit points and authorities and evidence in support of the requested attorneys' fees and costs. (Motion at 6.) The amounts requested by Plaintiff and Plaintiff's counsel raises no concerns about collusion. See Woodard, 2019 WL 4509301, at *11.

On balance, these factors support preliminary approval of the Settlement Agreement. The Agreement is potentially fair, adequate, and reasonable.

## V.  CLASS NOTICE

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously approved the Class Notice. See Class Notice Order.

The Court finds that the form and content of the proposed Notice is reasonable and fair and adequately advises Class Members of the terms of the proposed settlement, of their right to payment under the settlement, of their right to contest the number of Loads, of their right to file a Claim Form, of the possibility that a portion of the Gross Settlement Amount may revert to Defendant based upon the participation of the Classes in the settlement, of the scope and effect of the releases contained in the settlement, of the preliminary court approval, timing and procedural requirements for excluding oneself from the Classes, and objecting to the settlement, of the date of the Final Approval Hearing, of the right to file documentation in support of or in opposition to the settlement and to appear in connection with the Final Approval Hearing. Thus, the Court finds that the Notice clearly comports with all constitutional requirements, including those of due process.

The Court further finds that (a) the mailing of the Notice via first-class U.S. Mail to all Contract Carriers that Defendant brokered Loads to during the Class Period; (b) the posting of the Notice on the premises of all Contract Carriers that Defendant brokered Loads to during the Class Period; (c) the publishing of the Notice in publications targeted to reach potential Class Members who are unable to be identified through Defendant's records; and (d) the creation of a website for Class Members to view the Notice constitutes an effective method of notifying Class Members of their rights with respect to this action and settlement. The Court directs that all Contract Carriers post the Notice, including the Claim Form, in a prominent location at their principal place of business and display the Notice until the Opt-Out Deadline.

The parties believe that this will be the most effective way to distribute notice. (Motion at 5.) Single Truck Contract Carriers are members of the Subclass and will therefore have the Notice mailed and/or emailed or texted directly to them. (Id.) Contract Carriers with multiple

trucks will also have Notice mailed directly to them and will be asked to post the Notice as an additional method of reaching potential Class Members.  (Id.)  Notice by publication is also necessary because the Parties do not have knowledge of the identities and/or contract information for many of the drivers who worked for the Contract Carriers and who may be members of the Primary Class or the Subclass, to the extent the driver worked for a Contract Carrier that provided multiple trucks to haul the Loads.  (Motion at 5.)

### VI.  CAFA NOTICE

Defendant has provided evidence of its compliance with the CAFA notice requirements.  See Cash Decl. ¶ 4; CAFA Notice; see also 28 U.S.C. § 1715(b) ("Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official . . . .").  A court cannot grant final approval of a class action settlement until the CAFA notice requirements are met.  28 U.S.C. § 1715(d).

### VII.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval and **VACATES** the May 1, 2023.  The Court **ORDERS** as follows:

1. The Settlement Agreement is preliminarily approved as potentially fair, reasonable, and adequate.

2. The following classes are certified for settlement purposes only:

    a. Primary Class: "All current and former California residents who submit a valid Claim Form and who drove for Defendant John Christner Trucking, LLC (JCT) intrastate pursuant to a contract-carrier agreement at any time from July 6, 2013 through the date the Court enters preliminary approval of this settlement (Class Period)."

    b. Subclass: "All current and former California residents who individually, or on behalf of a company they owned, entered into a contract-barrier agreement with JCT and drove California intrastate loads brokered by JCT to the Contract Carrier at any time during the Class Period."

3. Haffner Law PC is appointed as class counsel for purposes of settlement only.

4. Plaintiff Carlos Moreno is appointed as the class representative.

5. CPT Group, Inc. is appointed as the Settlement Administrator.

6. The Court approves the methods for giving notice of the settlement to Class Members, as stated in the Settlement Agreement and the Motion.

7. No later than 28 days after the entry of this Order, Defendant shall provide the Settlement Administrator with a list containing Contract Carrier names, and, where available, individual names, EIN numbers, Social Security numbers, last-known addresses, email addresses and phone numbers, along with: (a) the total number of trucks as determined by the carrier profile in JCT's records or as determined from the FMCSA's SAFER system for the Contract Carrier; and (b) the Contract Carrier Total Loads during the Class Period, pursuant to the Settlement Agreement.

8. No later than 14 days after receipt of the Settlement Class Members' information from Defendant, the Settlement Administrator shall mail the Notice to all Class Members by first-class U.S. Mail, pursuant to the Settlement Agreement.

9. The Final Approval Hearing shall be held on **Monday, December 4, 2023**, at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division, located at 3470 12th Street, Riverside, California 92501. The Final Approval Hearing may be postponed, adjourned, transferred, or continued by order of the Court without further notice to Class Members. After the Final Approval Hearing, the Court may enter a Final Approval Order in accordance with the Settlement Agreement that will adjudicate the rights of all Class Members.

10. The parties' briefs and other papers in support of final approval of the proposed settlement, and Class Counsel's application for an award of attorneys' fees and costs, shall be filed with the Court no later than 28 days prior to the Final Approval Hearing.

11. As of the date this Order is signed, all dates and deadlines associated with the Action shall be stayed, other than those pertaining to the administration of the settlement.

12. If for any reason the Court does not execute and file an order granting Final Approval of the Settlement, or if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason whatsoever, the Settlement Agreement and all evidence and proceedings had in connection therewith shall be without prejudice to the status quo ante rights of the parties in this action, as set forth in the Settlement Agreement, and this Order shall be rendered null and void and shall be vacated.

**IT IS SO ORDERED.**