Joshua H. Haffner, SBN 188652
(jhh@haffnerlawyers.com)
Trevor Weinberg, SBN 330778
(tw@haffnerlawyers.com)
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, CA 91403
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Attorneys for Plaintiff and all others similarly situated

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS MORENO, an individual; on behalf of himself and all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>JCT LOGISTICS, INC; and DOES 1 through 10, inclusive,<br><br>  Defendants. | CASE NO. 5:17-cv-02489-JGB-KK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: December 4, 2023<br>Time: 9:00 a.m.<br>Location:  Courtroom 1 |

---

1

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **December 4, 2023 at 9:00 a.m**. or as soon thereafter as the matter may be heard in Courtroom 1 of the above-entitled court located at 3470 Twelfth Street, Riverside, CA 92501, Plaintiff Carlos Moreno ("Plaintiff"), individually, and on behalf of all others similarly situated ("Class Members"), will, and hereby does, move the Court pursuant to Fed. R. Civ. P. 23(e) for an order that: (1) Grants final approval of the proposed $1,200,000.00 settlement of *Carlos Moreno v. JCT Logistics, Inc.* C.D. Cal. Case No. 5:17-cv-02489-JGB-KK, attached as Exhibit 1 to the Declaration of Joshua H. Haffner filed herewith, as fair, reasonable, and adequate; (2) reaffirming the appointment of Carlos Moreno as the Settlement Class Representative and of Haffner Law PC, as Settlement Class Counsel; (3) finding that the Settlement Class Representative and Settlement Class Counsel have fairly and adequately represented the Settlement Class with respect to this litigation and the Settlement; (4) finding that the Settlement is fair, adequate, and reasonable and that the Settlement Class Members were given adequate notice of the Settlement, which advised them of their rights to exclude themselves from the Settlement and to object to the Settlement in a reasonable manner that satisfies the requirements of due process; (5) directing John Christner Trucking, LLC ("Defendant") to pay the Settlement Funds into the Qualified Settlement Fund ("QSF"); (6) directing CPT Group, Inc. ("Settlement Administrator"), to distribute the Settlement Payments in accordance with the terms of the Settlement Agreement; (7) awarding attorney's fees in the amount of $400,000 (representing 33 1/3% of the settlement fund, and a 1.14 multiplier on Class Counsels' lodestar), and costs in the amount of $20,000.00, and directing the Settlement Administrator to pay the amounts awarded by the Court in accordance with the terms of the Settlement Agreement to Settlement Class Counsel; (8) awarding Plaintiff, Carlos Moreno, an Incentive Award of $10,000; (9) awarding $37,000 as settlement administration expenses; (10) entering a judgment providing that Settlement

Class Members who did not timely exclude themselves from the Settlement have released their claims against Defendant and all Released Parties as set forth in the Settlement Agreement; (11) ruling that Settlement Class Members who did not timely object to the Settlement have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement; (12) directing the clerk of the Court to enter a final approval order and final judgment; and (13) without affecting the finality of the final judgment, reserving continuing jurisdiction over the Parties for the purposes of implementing, enforcing, and/or administering the Settlement or enforcing the terms of the judgment.

This Motion is based upon this Notice, the accompanying Memorandum of Points & Authorities, the Settlement Agreement, the Declaration of Joshua H. Haffner filed herewith, all papers and pleadings on file in this action, and such oral argument as may be considered by the Court at the time of the hearing.

DATED: November 6, 2023                                 **HAFFNER LAW PC**

                                          By: /s/ Trevor Weinberg
                                             Joshua H. Haffner
                                             Trevor Weinberg
                                             *Attorneys for Plaintiff*

# TABLE OF CONTENT

I. INTRODUCTION ........................................................................................... 1

II. PROCEDURAL BACKGROUND .................................................................. 2

III. PRINCIPAL SETTLEMENT TERMS ............................................................ 3

    A. CLASS DEFINITION ................................................................................. 3
    B. KEY SETTLEMENT TERMS ..................................................................... 3
    C. CLASS NOTICE ......................................................................................... 4
    D. CLAIMS, OPT OUTS, AND OBJECTIONS ................................................ 5
    E. ATTORNEYS' FEES AND LITIGATION EXPENSES ............................... 6

IV. ARGUMENT ................................................................................................. 6

    A. LEGAL STANDARDS FOR FINAL APPROVAL ...................................... 6
    B. DUE NOTICE OF THE SETTLEMENT HAS BEEN PROVIDED TO THE CLASS MEMBERS ..................................................................................... 7
    C. THERE IS NO BASIS TO DISTURB THE CERTIFICATION ORDER ...... 8
    D. THE SETTLEMENT IS FUNDAMENTALLY FAIR, ADEQUATE, AND REASONABLE ........................................................................................... 8

       1. Strength Of Plaintiff's Case ................................................................ 9
       2. Risk, Expense, Complexity, And Likely Duration Of Further Litigation ........... 10
       3. Risk Of Maintaining Class Action Status Throughout The Trial ....................... 10
       4. Amount Offered In Settlement .......................................................... 11
       5. Extent Of Discovery Completed And The Stage Of The Proceedings ................ 11
       6. Experience And Views Of Counsel .................................................. 12
       7. Presence Of A Governmental Participant ........................................ 13
       8. Reaction By Class Members ............................................................ 13

IV. CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

Cases

*Barbosa v. Cargill Meat Solutions Corp.* 1:11-CV-00275-SKO, 2013 WL 3340939, (E.D. Cal. 2013) .................................................................................................................. 10

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................ 13

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) .................................................. 13

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566(9th Cir. 2004) ........................................ 7

*City of Detroit v. Grinnell Corp.* 495 F.2d 448 (2nd Cir. 1974) ........................................... 11

*Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB (VBKx), 2016 ................ 8

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. C 08 1365 CW (EMC), 2010 WL 1687832, (N.D. Cal. Apr. 22, 2010) .................................................................................. 13

*Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068-MMC, 2007 WL 221862, (N.D. Cal. Jan. 26, 2007) ................................................................................................................ 13

*Harris v. Vector Mktg.*, No. C--08--5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ......... 8

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................... 12

*Linney v. Cellular Alaska Partnership* 151 F.3d 1234 (9th Cir. 1998) ................................. 11

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 3065 (1950) .................................... 8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............ 6

*Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615 (9th Cir. 1982) ........................................................................................................................... 9

*Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, (D. Nev. Oct. 28, 2010) ........................................................................................................................... 13

5
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

*Rodriguez v. West Publ'g Corp.* 563 F.3d 948 (9th Cir. 2009) .............................................. 9

*Wren v. RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826 .................. 13

Statutes

Fed. R. Civ.P. 23(e)(2) ................................................................................................... 6

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Carlos Moreno ("Plaintiff") respectfully submits this Motion seeking final approval of the settlement ("Settlement") of a putative class action which will resolve California wage and hour claims against defendant John Christner Trucking, LLC ("Defendant") arising out of Defendant's policies and procedures for truck drivers who were classified by Defendant as independent contractors or who worked for individuals and/or companies that Defendants classified as independent contractors. The terms of this settlement are reflected in the Settlement Agreement attached as Exhibit 1 to the Declaration of Joshua H. Haffner ("Haffner Decl.").

This Settlement follows discussions and negotiations between counsel for the parties, formal and informal discovery, depositions, a contested class certification motion, a motion for summary judgment, two full-day mediations, as well as investigation and evaluation of the claims of Plaintiff by the parties. Haffner Decl., ¶18. These activities have permitted both sides to accurately assess the merits of the claims and the defenses to those claims, and compromise the issues in a fair and equitable basis. The parties have therefore concluded it is desirable that the action be settled upon such terms and conditions set forth in the Settlement Agreement. See Haffner Decl., Exh. 1 (Joint Stipulation of Settlement and Release of Class Action Claims (Settlement Agreement)).

Plaintiff's motion for preliminary approval was granted on April 28, 2023. Pursuant to the Court's Order, the Settlement Administrator duly sent notice of the Settlement to the class by several means. First, they published notice in two publications: Fleet Owner and the Trucker Newspaper. Additionally, the Administrator sent notice via first-class mail to all 3,048 Class Members. **No class members objected to or opted out of the Settlement**.

In exchange for the releases set forth in the Settlement Agreement, Defendant has agreed to a settlement that provides monetary relief for the Class Members and Subclass Members as defined in the Settlement Agreement. This settlement involves a settlement fund in the amount of $1,200,000.00. Based on the terms of the settlement, the Class Members will receive at least 45% of the Net Settlement Amount. This is a good result that benefits the Classes because Plaintiff and the Classes face substantial uncertainty litigating this dispute through trial and potential appeals.

Therefore, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

## II. PROCEDURAL BACKGROUND

Plaintiff filed his initial complaint against JCT Logistics, Inc., on July 6, 2017, in Superior Court of California, County of San Bernardino, Case No.: CIVDS1712772. Haffner Decl., Exh. 2. On July 27, 2017, Plaintiff filed an Amendment to Complaint, naming Defendant as a defendant in the action. Haffner Decl., Exh. 3. On December 13, 2017, this lawsuit was removed to this Court, the United States District Court for the Central District of California. Haffner Decl., ¶5.

Following discovery, Plaintiff filed a Motion for Class Certification on October 31, 2018. Haffner Decl., Exh. 4. After substantial briefing in support of the Motion, the Court granted the Motion in part on May 29, 2019. Haffner Decl., Exh. 5. Defendant filed a Motion for Summary Judgment on November 19, 2018. Haffner Decl., ¶8. The Court denied the motion for summary judgment on January 8, 2019. Haffner Decl., Exh. 6.

The parties first conducted mediation on September 5, 2018. Haffner Decl., ¶10. However, the parties were unable to come to an agreement. (*Id*.) On March 3, 2020, the Court granted the parties' joint stipulation to stay the action pending the outcome of three key cases pending in the California Supreme Court and the Ninth Circuit Court of Appeals. Haffner Decl., ¶11. The stay was lifted on July 8, 2022. *Id*. The parties

conducted a second mediation on November 23, 2022, where the case ultimately settled. Haffner Decl., ¶12.

### III. PRINCIPAL SETTLEMENT TERMS

#### A. Class Definition

The Settlement Classes are broken down between the Primary Class and Subclass. The Primary Class is defined as:

> All current and former California residents who submit a valid Claim Form and who drove for Defendant John Christner Trucking, LLC (JCT), intrastate pursuant to a contract-carrier agreement at any time from July 6, 2013, through the date the Court enters preliminary approval of this settlement (Class Period).

The Subclass is defined as:

> All current and former California residents who individually, or on behalf of a company they owned, entered into a contract-carrier agreement with JCT and drove California intrastate loads brokered by JCT to the Contract Carrier at any time during the Class Period.

The Class Period is defined as July 6, 2013, through April 28, 2023 (the date the Court entered preliminary approval of this settlement). The reason for these specific dates is they are determined by the date the lawsuit was initially filed. This lawsuit was initially filed in Superior Court of California, County of San Bernardino on July 6, 2017, so the period reached back four years prior to the filing date. The parties have determined that there are 138,185 intra-state loads (Loads) that may have been driven by Class Members and Defendant brokered Loads to 3,074 carriers (Contract Carriers) through the date of preliminary approval.

#### B. Key Settlement Terms

The Gross Settlement Amount is $1,200,000.00. Attorneys' Fees will be up to $400,000 (1/3 of the Gross Settlement Amount). Attorneys' Costs will be up to $20,000. The Incentive Award will be up to $10,000, and Settlement Administration costs will be up to $40,000. These fees, costs, and incentive awards will be subtracted from the Gross Settlement Amount to derive the Net Settlement Amount. The

Settlement Administrator will divide the Net Settlement Amount by the total Loads to arrive at a payment per load that will form the basis of the settlement payments (Payment Per Load); the Payment Per Load is $5.30. A minimum of 45% of the Net Settlement Amount is non-reversionary. The non-revisionary amount is necessary because the Parties do not have knowledge of the Class Members who drove many of the Loads covered by the Settlement. Therefore, drivers who believe they are members of the Primary Class were required to submit a Claim Form to receive a settlement payment.

Contract Carriers who only had one truck under contract (Single Truck Contract Carrier) are presumed to be Subclass Members and will receive the Payment Per Load for all Loads that Defendant's records show were brokered to that Single Truck Contract Carrier without filing a Claim Form. These payments will be based on the presumption that the owner of a Single Truck Contract Carrier was the individual who drove the Loads. However, the Settlement was structured so that if a Primary Class Member submitted a Claim Form relating to Loads brokered to a Single Truck Contract Carrier, the Settlement Administrator was to notify that Single Truck Contract Carrier of the need to submit a Claim Form so the Parties and the Settlement Administrator can resolve the competing claims for those Loads and make a final determination as to how the settlement related to those Loads should be paid. Haffner Decl., Exh. 1, p. 22. Although there were some disputes from Single Truck Contract Carriers, no Primary Class Member submitted a Claim Form claiming they delivered Loads attributed to a Single Truck Contract Carrier. Declaration of Emilio Cofinco, CPT Group, Inc. (Cofinco Decl.), ¶ 16. In addition, there were no disputes between Primary Class Member Claimants over Load amounts. *Id.*, ¶ 22

### C. Class Notice

The Court's Preliminary Approval Order set forth a schedule and procedures for providing the Settlement Notice to the Class Members and for Class Members to

submit requests for claims, opt outs, or objections to the Settlement. Notice was sent via First Class U.S. Mail to confirmed addresses of Class Members, as well as email or text, if an email address or cell phone number was provided by Defendant. Additionally, Notice was published in "The Trucker" and "Fleet Owner". The Settlement Administrator also created a website for the Settlement which allowed Class Members to view the Notice and obtain a Claim Form.

### D. Claims, Opt Outs, And Objections

To timely object or opt out of the Settlement, Class Members had to submit a request meeting the requirements set forth in the Settlement Agreement. To date, the Settlement Administrator received no objections or requests to opt out of the settlement. *Id.*, ¶¶ 14-15.

To maximize the reach of the Settlement, yet account for the fact that neither Plaintiff nor Defendant could identify all Primary Class Members, Class Members who did not meet the definition of a Single Truck Contract Carrier were required to submit a Claim Form to receive a Settlement Payment. Single Truck Contract Carriers may also have submitted Claim Forms either disputing or confirming the number of Loads they hauled. The Settlement Administrator received 38 responses before the October 14, 2023, deadline for filing claims or disputes, 15 from Single Truck Contract Carriers, and 23 from affiliates of multi-truck Contract Carriers. *Id.*, ¶ 16. Of the 38 responses received: (a) none of the 15 Single Truck Contract Carrier responses were valid disputes, therefore all 15 Class Members will receive their Single Truck Contract Carrier Total Loads amounts as originally listed; (b) three (3) of the Primary Contract Carrier responses were duplicates, four (4) were valid Claims, six (6) were partially valid Claims, and 10 were invalid, but allowed by Defendant at the lower of the Claimed Loads or the Total Loads. *Id.*, ¶ 22. As of November 6, 2023, there are 1,073 Participating Class Members who will be paid their portion of the Net Settlement Amount, estimated to be $375,838.54, which represents 51.2% of the Net Settlement

Amount, or approximately 6% more than the Minimum Payment to Class Members from Net Settlement Amount of 45%. *Id.*, ¶ 23. Of the 1,060 Participating Class Members, 1,053 are Single Truck Carrier Class Members and seven (7) are Primary Carrier Class Members. The Total Settlement Due is $842,838.54. *Id.*

### E. Attorneys' Fees And Litigation Expenses

At the time of the Final Approval Hearing, Plaintiff's counsel will request an award of attorneys' fees in an amount not to exceed $400,000 (which constitutes one third of the Settlement and a 1.14 multiplier on Class Counsels' lodestar), and actual litigation expenses in an amount not to exceed $20,000.[1] The parties did not discuss attorneys' fees until after an agreement was reached in principle with respect to the benefits of the Settlement, including the amount of monetary relief to the Class Members. Within the limitation of the Settlement Agreement, the actual amount of any fee and expense award will be in the discretion of the Court, after Class Members have had an opportunity to object or otherwise state their opinions regarding this and every other aspect of the Settlement. In addition to this Motion for Final Approval, Class Counsel will submit detailed points and authorities and evidence in support of the requested attorneys' fees and expenses. Furthermore, any award of attorneys' fees and expenses is subject to Court approval to ensure that the award is fair, adequate, reasonable, and in accordance with applicable law.

## IV. ARGUMENT

### A. Legal Standards For Final Approval

The Court's review of a class action settlement requires a two-step process. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). First, the Court must determine whether to grant preliminary approval and order class notice. *Id*. Second, the Court must hold a fairness hearing to determine if the settlement is "fair, reasonable, and adequate." Fed. R. Civ.P. 23(e)(2).

---

[1] Plaintiff notes that Haffner Law PC's current litigation expenses already exceed $20,000 as of the filing of this Motion.

6

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

To determine whether a settlement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that will ultimately inform final settlement approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, the Court has already granted preliminary approval and ordered Notice. As a result, the Court must now hold a fairness hearing to determine whether the settlement is "fair, reasonable, and adequate." The proposed Settlement readily satisfies these standards.

**B. Due Notice Of The Settlement Has Been Provided To The Class Members**

In its Preliminary Approval Order, the Court held that "the form and content of the proposed Notice is reasonable and fair and adequately advises Class Members of the terms of the proposed settlement." Dkt. 104. The Court further held that the distribution of the Notice "constitutes an effective method of notifying Class Members of their rights with respect to this action and settlement." *Id*.

The Notice plan meets and exceeds all legal requirements. Using a range of diverse techniques designed to ensure maximally effective communication of the Settlement to all Class Members, the Notice plan included direct First Class, U.S. Mail Notices to confirmed addresses of Class Members, as well as email or text, if an email address or cell phone number was provided by Defendant. Additionally, Notice was published in "The Trucker" and "Fleet Owner". The Settlement Administrator also created a website for the Settlement which allowed Class Members to view the Notice and obtain a Claim Form.

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Publication and other notice techniques are sufficient where individual notice to the Class is impractical. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Incorporating both direct and indirect notification methods, the Notice plan here took every reasonable step to ensure all Class Members were aware of the Settlement. The implementation of the Notice plan was fully consistent with this Court's Preliminary Approval Order.

Further, the Notice plan was an efficient, effective, and cost-efficient way to provide notice of the Settlement to Class Members. Because the parties lacked and continue to lack information regarding the identity of and contact information for all potential Class Members, the Notice plan described above was reasonable and designed to provide the best notice possible under these circumstances.

### C. There Is No Basis To Disturb The Certification Order

The Settlement was reached after the Court certified a litigation class based on full briefing and a thorough evidentiary record. Dkt. 64. The Court confirmed the Class and Subclass in its order granting preliminary approval. Dkt. 104. Since the Class and Subclass were already certified at the time of Settlement, and since there is no basis to revisit the Court's certification order, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." *Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499-JGB (VBKx), 2016 WL 1375838, at *5 (C.D. Cal. Apr. 4, 2016) (citing authorities). Rather, the Court "may focus instead on whether the proposed settlement is fair, adequate, and reasonable." *Harris v. Vector Mktg.*, No. C--08--5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012).

### D. The Settlement Is Fundamentally Fair, Adequate, And Reasonable

A settlement is "fair, adequate, and reasonable" when "the interests of the class are better served by the settlement than by further litigation." Manual for Complex

8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Litigation (Fourth) § 21.61. The Court should assess the following factors when analyzing final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *Rodriguez*, 563 F.3d at 963.

"This is by no means an exhaustive list of relevant considerations, nor have we attempted to identify the most significant factors. The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). The Ninth Circuit has "never prescribed a particular formula by which that outcome must be tested[,] . . . ultimately, the [Court's] determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice[.]" *Rodriguez*, 563 F.3d at 965. The Court's decision on the final approval of the Agreement "must show it . . . explored comprehensively all factors", but the Court "is not required to 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Id*. at 964 (quoting *Officers for Justice*, 688 F.2d at 625; other citation, punctuation omitted).

### 1. Strength Of Plaintiff's Case

The initial fairness factor addresses Plaintiff's likelihood of success on the merits. See *Rodriguez v. West Publ'g Corp.* 563 F.3d 948, 964-965 (9th Cir. 2009). To determine the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." *Id*. at 965.

Here, Plaintiff survived Defendant's motion for summary judgment. Haffner Decl., Exh. 6. However, as noted above, Plaintiff recognizes Defendant has factual and legal defenses which present obstacles to prevailing at trial. Because the Settlement represents a significant recovery for the Classes, particularly in view of the challenges Plaintiff would likely face in this litigation going forward, this factor weighs in favor of approval. See *Barbosa v. Cargill Meat Sols. Corp.* 1:11-CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.").

### 2. Risk, Expense, Complexity, And Likely Duration Of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 526 (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

As discussed above, Defendant continues to contest liability. Defendant contends that based on new case law, it would attempt to decertify the class, as well as litigate the ultimate merits of the case – which would be a long, complex, and expensive process. Therefore, the settlement avoided further protracted and expensive litigation. Accordingly, this factor weighs in favor of settlement approval.

### 3. Risk Of Maintaining Class Action Status Throughout The Trial

Although the Court has granted, in part, Plaintiff's motion for class certification, Defendant has indicated that absent the settlement, it would move to decertify the class. Defendant argues that California enacted a Business-to-Business Exemption to the ABC misclassification test. Cal. Labor Code § 2776. Under the exemption, the ABC test announced in *Dynamex Operations W. v. Superior Court*, 4 Cal.5th 903 (2018), and codified in Labor Code section 2775 does not apply to "a bona fide business-to-

business contracting relationship." Cal. Labor Code § 2776. Defendant contends that it can satisfy all the exemption requirements for Plaintiff individually. Defendant further contends that each of the exemption factors requires consideration of individualized evidence from each Class Member. As a result, Defendant contends that the Court would likely decertify Plaintiff's claims.

Although Plaintiff disputes Defendant's argument that the class would be decertified based on the Business-to-Business exemption, there is some risk of maintaining class action status throughout the trial, and this factor weighs in favor of approving the settlement.

### 4. Amount Offered In Settlement

Through mediation, Plaintiff projected the Class's total damages as $4,866,818.29. The settlement amount, $1,200,000, is slightly less than one-fourth the potential recovery, which, considering the challenges and uncertainties of the case, is fair and adequate. See *Linney v. Cellular Alaska P'ship* 151 F.3d 1234, 1242 (9th Cir. 1998) ("'The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" (quoting *City of Detroit v. Grinnell Corp.* 495 F.2d 448, 455 n. 2 (2nd Cir. 1974))). Further, the 1,073 Participating Class Members will be paid an estimated $375,838.54, which represents 51.2% of the Net Settlement Amount, and Defendant will pay a total of $893,515.77, which is 74.5% of the Gross Settlement Amount. Given the potential defenses Defendant could put forward, including an argument against class certification, the amount offered and to be paid here is appropriate and reasonable.

### 5. Extent Of Discovery Completed And The Stage Of The Proceedings

This factor requires that the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239.

Here, the parties have conducted formal and informal discovery, multiple

11

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

depositions, a contested class certification motion, a motion for summary judgment, two full-day mediations, as well as investigation and evaluation of the claims of Plaintiff by the parties. Haffner Decl., ¶18. Based on the review of the documents produced in this case, written discovery, and the information Defendant provided prior to mediation, the parties believe they have enough evidence to evaluate the strength and weaknesses of the case. Therefore, this factor favors settlement. See *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)).

### 6.   Experience And Views Of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying ligation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel has extensive experience serving as class counsel in wage and hour litigation actions in federal and state court. See Haffner Decl., ¶¶14-16. Class Counsel believes, on balance, the settlement is fair, reasonable, and adequate, representing a good result for the class after handicapping the likely odds of prevailing on the merits. As a result, the experience and views of Class Counsel also weigh in favor of approval.

Moreover, settlements are afforded a presumption of fairness if the negotiations occurred at arm's length. 4 Newberg on Class Actions § 11.41 (4th ed. 2013). Here, the Settlement was reached through the efforts of counsel following a mediation conducted by experienced mediator Michael Young, who has substantial experience in labor and employment litigation.

### 7. Presence Of A Governmental Participant

No governmental entity is present in this litigation. Therefore, this factor favors approval.

### 8. Reaction By Class Members

This factor weighs in favor of final approval because no Class Member objected to or opted out of the settlement.

The lack of any opting out or objecting by Class Members provides powerful evidence of the Settlement's fairness. See, e.g., *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement with 45 objections and 500 opt-outs from class of 90,000 members, roughly 0.6%); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding that sixteen opt outs in class of 329 members, or 4.86%, strongly supported settlement); *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068-MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (approving settlement with 2% opt-out rate); *Wren v. RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011) (holding that "'the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members'") (quoting *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529); see also *Garner v. State Farm Mut. Auto. Ins. Co.*, No. C 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010); *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("The small number of objections is an indication that the settlement is fair, adequate, and

reasonable.").

Therefore, the Settlement is fundamentally fair, adequate, and reasonable under the circumstances.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant final approval of the Settlement as set forth in the [Proposed] Order submitted herewith; order Defendant to pay the Settlement Funds into the QSF; order the Settlement Administrator to pay Class Counsel its attorney's fees as approved by the Court, Class Counsel's costs and expenses as approved by the Court, the Incentive Award to Plaintiff as approved by the Court, its Administrative Expenses as approved by the Court, and the Settlement Payments to all Class Members; and enter Judgment according to the Settlement Agreement.

Respectfully submitted,

DATED: November 6, 2023         **HAFFNER LAW PC**

By: */s/ Trevor Weinberg*
Joshua H. Haffner
Trevor Weinberg
*Attorneys for Plaintiff*