UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-2489 JGB (KKx)** | Date | December 4, 2023 |
|---|---|---|---|
| Title | *Carlos Moreno v. JCT Logistics, Inc., et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Joshua H. Haffner | Angela S. Cash |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 105); and (2) GRANTING Plaintiff's Motion for Attorneys' Fees (Dkt. No. 106)

On November 6, 2023, Plaintiff Carlos Moreno filed a Motion for Final Approval of Class Action Settlement ("MFA," Dkt. No. 105) and a Motion for Attorneys' Fees ("MAF," Dkt. No. 106) (collectively, "Motions"). The MFA is unopposed. On December 4, 2023, the Court held a hearing on the Motion. After considering oral argument and papers filed in support of, and in opposition to, the Motions, the Court GRANTS Plaintiff's Motions.

## I.  BACKGROUND

On July 14, 2017, Plaintiff Carlos Moreno ("Plaintiff" or "Moreno") filed an amended class action complaint against Defendants JCT Logistics, Inc., John Christner Trucking, LLC, John Christner Trucking, Inc., and Does 1 through 10 (collectively, "Defendant" or "JCT") in the Superior Court of the State of California, County of San Bernardino.  ("FAC," Dkt. No. 3-1.) Plaintiff's case arises from Defendant's alleged misclassification of its truck drivers as independent contractors.  (Id. ¶ 1.)  In his FAC, Plaintiff asserts seven causes of action: (1) failure to provide meal periods; (2) failure to provide rest breaks; (3) failure to pay minimum wages; (4) failure to furnish timely and accurate wage statements; (5) failure to pay all wages owed every pay period; (6) failure to reimburse business expenses; and (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.  (See id.)  Defendant removed the case to this Court on December 13, 2017.  ("Notice of Removal," Dkt. No. 3.)

On January 8, 2019, the Court denied Defendant's motion for summary judgment. ("Summary Judgment Order," Dkt. No. 55.) On May 29, 2019, the Court granted-in-part Plaintiff's motion for class certification. ("Class Certification Order," Dkt. No. 64.) The Court certified the entire class as to the meal period claim and the subclass as to the minimum wage and rest period claims. (See id.) On February 18, 2020, the Court granted-in-part and denied-in-part Plaintiff's motion to approve class notice. ("Class Notice Order," Dkt. No. 82.)

On March 3, 2020, the Court granted the parties' joint stipulation to stay the action pending the outcome of three cases in the California Supreme Court and the Ninth Circuit Court of Appeals. (Dkt. No. 84.) On July 8, 2022, the Court lifted the stay in the action. (Dkt. No. 91.)

On April 28, 2023, the Court granted preliminary approval of this class action settlement. ("Preliminary Approval Order," Dkt. No. 104.) In the Preliminary Approval Order, the Court ordered:

1. The Settlement Agreement is preliminarily approved as potentially fair, reasonable, and adequate.

2. The following classes are certified for settlement purposes only:

    a. Primary Class: "All current and former California residents who submit a valid Claim Form and who drove for Defendant John Christner Trucking, LLC (JCT) intrastate pursuant to a contract-carrier agreement at any time from July 6, 2013 through the date the Court enters preliminary approval of this settlement (Class Period)."

    b. Subclass: "All current and former California residents who individually, or on behalf of a company they owned, entered into a contract-barrier agreement with JCT and drove California intrastate loads brokered by JCT to the Contract Carrier at any time during the Class Period."

3. Haffner Law PC is appointed as class counsel for purposes of settlement only.

4. Plaintiff Carlos Moreno is appointed as the class representative.

5. CPT Group, Inc. is appointed as the Settlement Administrator.

6. The Court approves the methods for giving notice of the settlement to Class Members, as stated in the Settlement Agreement and the Motion.

7. No later than 28 days after the entry of this Order, Defendant shall provide the Settlement Administrator with a list containing Contract Carrier names, and, where available, individual names, EIN numbers, Social Security numbers, last-known addresses, email addresses and phone numbers, along with: (a) the total number of trucks

as determined by the carrier profile in JCT's records or as determined from the FMCSA's SAFER system for the Contract Carrier; and (b) the Contract Carrier Total Loads during the Class Period, pursuant to the Settlement Agreement.

8. No later than 14 days after receipt of the Settlement Class Members' information from Defendant, the Settlement Administrator shall mail the Notice to all Class Members by first-class U.S. Mail, pursuant to the Settlement Agreement.

9. The Final Approval Hearing shall be held on Monday, December 4, 2023, at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division, located at 3470 12th Street, Riverside, California 92501. The Final Approval Hearing may be postponed, adjourned, transferred, or continued by order of the Court without further notice to Class Members. After the Final Approval Hearing, the Court may enter a Final Approval Order in accordance with the Settlement Agreement that will adjudicate the rights of all Class Members.

10. The parties' briefs and other papers in support of final approval of the proposed settlement, and Class Counsel's application for an award of attorneys' fees and costs, shall be filed with the Court no later than 28 days prior to the Final Approval Hearing.

11. As of the date this Order is signed, all dates and deadlines associated with the Action shall be stayed, other than those pertaining to the administration of the settlement.

12. If for any reason the Court does not execute and file an order granting Final Approval of the Settlement, or if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason whatsoever, the Settlement Agreement and all evidence and proceedings had in connection therewith shall be without prejudice to the status quo ante rights of the parties in this action, as set forth in the Settlement Agreement, and this Order shall be rendered null and void and shall be vacated.

On November 6, 2023, Plaintiff filed these Motions. In support of the Motions, Plaintiff filed the following documents:

- Declaration of Emilio Cofinco ("Cofinco Decl.," Dkt. No. 105-1);
- Declaration of Carlos Moreno ("Moreno Decl.," Dkt. No. 105-2);
- Declaration of Joshua H. Haffner ("Haffner Decl.," Dkt. No. 105-3).

On November 20, 2023, Defendants submitted a response to the MFA indicating they had no objection to the approval of the class action settlement. (Dkt. No. 107.) On the same day, they submitted an opposition to the MAF. ("Opposition," Dkt. No. 108.) Plaintiff replied on November 27, 2023. ("Reply," Dkt. No. 109.)

//

## II. THE SETTLEMENT AGREEMENT

Plaintiff filed a copy of the settlement agreement as Exhibit 1 to the Haffner Decl. ("Settlement Agreement," Dkt. No. 105-3.) The Court preliminarily approved the Settlement Agreement on April 28, 2023. The terms of the Settlement Agreement are discussed below. The Court incorporates by reference the definitions provided in the Settlement Agreement; all terms defined therein shall have the same meaning in this Order.

### A. Settlement Class

The Court previously certified Plaintiff's proposed Primary Class and Subclass. (Class Certification Order at 7.) The Primary Class is defined as:

> All current and former California residents who submit a valid Claim Form and who drove for Defendant John Christner Trucking, LLC (JCT), intrastate pursuant to a contract-carrier agreement at any time from July 6, 2013, through the date the Court enters preliminary approval of this settlement (Class Period).

(MFA at 3.) The Subclass is defined as:

> All current and former California residents who individually, or on behalf of a company they owned, entered into a contract-carrier agreement with JCT and drove California intrastate loads brokered by JCT to the Contract Carrier at any time during the Class Period.

(Id.) The Class Period is defined as July 6, 2013, through April 28, 2023 (the date the court entered preliminary approval of the settlement). (Id.) The Class Period reaches back four years before the date Plaintiff filed his complaint. (Id.)

The parties have determined that there were approximately 138,185 intra-state loads ("Loads") that may have been driven by Class Members, and Defendant brokered Loads to 3,074 carriers ("Contract Carriers") through the date of preliminary approval. (Id.)

As of November 6, 2023, there were 1,073 Participating Class Members who will be paid their portion of the Net Settlement Agreement. (Id. at 5.)

### B. Financial Terms

The Gross Settlement Amount is $1,200,000.00. (Id. at 3.) Attorneys' fees will be up to $400,000, or one-third of the Gross Settlement Amount. (Id.) Attorneys' costs will be up to $20,000. (Id.) Plaintiff's incentive award will be up to $10,000, and settlement administration costs will be up to $40,000. (Id.) These fees, costs, and incentive award will be subtracted from the Gross Settlement Amount to calculate the Net Settlement Amount. (Id.) The Settlement Administrator will divide the Net Settlement Amount by the total number of Loads to calculate a

payment per load ("Payment Per Load") that will form the basis of the settlement payouts. (Id. at 4.) The Payment Per Load is $5.30. (Id.) At least 45 percent of the Net Settlement Amount is non-reversionary to the Defendant. (Id.) Drivers who believe they are members of the Primary Class were required to submit a Claim Form to receive a settlement payment. (Id.)

Contract Carriers who only had one truck under contract ("Single Truck Contract Carriers") are presumed to be Subclass Members and will be eligible to receive the Payment Per Load for all Loads that Defendant's records show were brokered to that Single Truck Contract Carrier without filing a Claim Form. (Id.) These payments will be based on the presumption that the owner of a Single Truck Contract Carrier was the individual who drove the Loads. (Id.) However, if a Primary Class Member submits a Claim Form relating to Loads brokered to a Single Truck Contract Carrier, the Settlement Administrator will notify that Single Truck Contract Carrier of the need to submit a Claim Form so the parties and the Settlement Administrator can resolve the competing claims for those Loads and make a final determination as to how the settlement related to those Loads should be paid. (Id.) Although there were some disputes from Single Truck Contract Carriers, no Primary Class Member submitted a Claim Form claiming they delivered Loads attributed to a Single Truck Contract Carrier. (Id.) In addition, there were no disputes between Primary Class Member Claimants over Load amounts. (Id.)

### C. Class Notice

Notice was sent via First Class U.S. Mail to confirmed addresses of Class Members, as well as email or text, if an email address or cell phone number was provided by Defendant. (Id. at 5.) Additionally, Notice was published in "The Trucker" and "Fleet Owner." (Id.) The Settlement Administrator also created a website for the Settlement which allowed Class Members to view the Notice and obtain a Claim Form. (Id.)

The parties also complied with the Class Action Fairness Act ("CAFA") notice requirements by serving all federal and state officials required to be notified of the settlement in this case. (Dkt. No. 101 ¶¶ 2, 4.)

### D. Attorneys' Fees and Costs

Attorneys' fees will be up to $400,000, or one-third of the Gross Settlement Amount. (MFA at 3.) Attorneys' costs will be up to $20,000. (Id.) Within the limitation of the Settlement Agreement, the actual amount of any fees and costs will be in the discretion of the Court.

### E. Class Representative

Plaintiff's incentive award will be up to $10,000. (Id.)

//

### F. Settlement Administration

The Court appointed CPT Group, Inc. as the Settlement Administrator. (Preliminary Approval Order at 5.) Settlement administration costs will be up to $40,000. (MFA at 3.)

### G. Claim, Opt-Out, and Objection Procedures

To object or opt out of the Settlement, Class Members must submit a request meeting the requirements set forth in the Settlement Agreement. (Id. at 5.) Class Members, other than Plaintiff, who wish to opt out of the settlement must mail or email a written Opt-Out Request to the Settlement Administrator no later than 120 days after the mailing of the Notices ("Opt-Out Deadline"). (Settlement Agreement at 6, 24.) To be valid, any Opt-Out Request must be completed and received by the Settlement Administrator with a postmark date of on or before the Opt-Out Deadline or received via email no later than 11:59 p.m. Pacific time on the Opt-Out Deadline. (Id.) Any Class Member who submits a valid Opt-Out Request shall not be considered a member of the Class or Subclass, shall be barred from participating in the settlement, and shall receive no benefit from the settlement. (Preliminary Approval Order at 5.)

The Class Notice shall inform Class Members of their right to object to the settlement. (Settlement Agreement at 24.) Any Class Member who wishes to object to the settlement must file and deliver a written Objection to the Court and serve copies of the written Objection to both Plaintiff's counsel and Defendant's counsel no later than the Opt-Out Deadline. (Id.)

Class Members who did not meet the definition of a Single Truck Contract Carrier were required to submit a Claim Form to receive a Settlement Payment. Single Truck Contract Carriers may also have submitted Claim Forms either disputing or confirming the number of Loads they hauled. (MFA at 5.) The Settlement Administrator received 38 responses before the October 14, 2023, deadline for filing claims or disputes, 15 from Single Truck Contract Carriers, and 23 from affiliates of multi-truck Contract Carriers. (Id.) Of the 38 responses received: (a) none of the 15 Single Truck Contract Carrier responses were valid disputes, therefore all 15 Class Members will receive their Single Truck Contract Carrier Total Loads amounts as originally listed; (b) three of the Primary Contract Carrier responses were duplicates, four were valid Claims, six were partially valid Claims, and 10 were invalid, but allowed by Defendant at the lower of the Claimed Loads or the Total Loads. (Id.)

### H. Release

Each Class Member who does not timely opt out of the Settlement will each release the Released Parties from any and all of the Released Claims. (Settlement Agreement at 32.) The Released Claims include all wage and hour claims under federal and state law that were brought or could have been brought in this case based on the facts alleged in the Complaint, including claims for unpaid minimum wages, missed meal and rest breaks, and derivative claims under California Labor Code Sections 203 and 226 and all claims for unlawful business practices under California Business and Professions Code Sections 17200, et seq. (Id. at 6.) Plaintiff and the

Class Members will also expressly waive and relinquish the provisions, rights, and benefits of California Civil Code Section 1542.  (Id.)

### III.   LEGAL STANDARD

**A.  Class Action Settlement**

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).  Whether to approve a class action settlement is "committed to the sound discretion of the trial judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy favors settlement of class actions.  See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement.  See id.  "The settlement must stand or fall in its entirety."  Id.

In order to approve the class action settlement herein, the Court must conduct a two-step inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied.  Id.  Second, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3).  Id.

**B.  Attorneys' Fees**

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2).  While the rule specifies requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees.  "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or contract authorizing such an award."  MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees.  See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund doctrine").  Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h).  Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'"  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## IV.  RULE 23 REQUIREMENTS

### A. Rule 23(a) and (b)

In its Preliminary Approval Order and Class Certification Order, the Court certified the Class in this matter under Rules 23(a) and 23(b)(3). (Preliminary Approval Order at 3; Class Certification Order at 28.) Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). The Court concludes all the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Class.

### B. Rule 23(c)(2)

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) dictates that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the proposed notice to be sent to Class Members. (Preliminary Approval Order at 10.) Notice was timely sent to Class Members pursuant to the Preliminary Approval Order. (Haffner Decl. ¶ 17.) The Settlement Administrator updated the Class Members' addresses, mailed Notice Packets via U.S. first class mail to all Class Members, created a website for the Settlement, sent text messages to cell phone numbers that Defendant provided for Class Members, and published a supplemental version of the Class Notice in "Fleet Owner" and "The Trucker." (Cofinco Decl. ¶¶ 6-11.) The Court therefore finds that notice to the Class was adequate.

### C. Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on December 4, 2023. In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

  (1) the strength of the plaintiff's case;

  (2) the risk, expense, complexity, and likely duration of further litigation;

  (3) the risk of maintaining class action status throughout the trial;

  (4) the amount offered in settlement;

  (5) the extent of discovery completed, and the stage of the proceedings;

  (6) the experience and views of counsel;

  (7) the presence of a governmental participant; and

  (8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998).  This list of factors is not exclusive, and a court may balance and weigh different factors depending on the circumstances of each case.  See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).  Upon considering these factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable to all concerned.

  **1. Strength of Plaintiff's Case**

  The initial fairness factor addresses Plaintiff's likelihood of success on the merits.  See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009).  In determining the probability of Plaintiff's success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

  Plaintiff acknowledges the potential weaknesses in his case.  (MFA at 9-10.)  Though Plaintiff survived Defendant's motion for summary judgment, Plaintiff recognizes that "Defendant has factual and legal defenses which present obstacles to prevailing at trial." (Id.)  In particular, Defendant argues that California's meal and rest break laws are preempted by federal law, and that after the Court certified the Classes, California enacted a business-to-business exemption which would support decertification.  (Preliminary Approval Order at 7.)

  Given the challenges Plaintiff faced in continued litigation over such issues, the Settlement represents a significant recovery for the Classes.  The Court finds this factor weighs in favor of approval.  See Barbosa v. Cargill Meat Solutions Corp., 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.").

  **2. Risk, Expense, Complexity, and Likely Duration of Further Litigation**

  In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required.  "[U]nless the settlement is clearly inadequate, its

acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Defendant continues to contest liability, as discussed above. (MFA at 10.) Specifically, without settlement, the parties would continue litigating the class certification issue as well as the ultimate merits of the case—a long, complex, and expensive process. (Id.) Therefore, the settlement avoids further protracted and expensive litigation. Accordingly, the Court finds this factor weighs in favor of settlement approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

As discussed above, Defendant has indicated that, absent the settlement, it will move to decertify the Classes based on new case law. (Id.) Defendant contends that California enacted a business-to-business exemption to the ABC test established in Dynamex Operations W. v. Superior Court, 416 P.3d 1 (Cal. 2018) and codified in California Labor Code Section 2775. (Id.) Under the exemption, the ABC test does not apply to "a bona fide business-to-business contracting relationship." Cal. Lab. Code § 2776. Defendant argues that it can satisfy the exemption requirements for Plaintiff individually, and that consideration of the exemption requirements will require individualized evidence from each Class Member. (MFA at 11.) As a result, Defendant claims that the Court would likely decertify the Classes. (Id.) Although Plaintiff disputes this, Plaintiff recognizes that "there is some risk" of maintaining class action status throughout trial. (Id.) As such, this factor favors approval. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (explaining that circumstances could arise justifying decertification and thus the factor weighed in favor of approving the settlement).

### 4. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000). Through mediation, Plaintiff projected the Class's total damages as $4,866,818.29. (MFA at 11.) The Gross Settlement Amount of $1,200,000 is slightly less than one-quarter (over 24%) of the potential recovery. (Id.) Although the Gross Settlement Amount represents a fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" In re Mego, 213 F.3d at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)).

The Court finds that the Gross Settlement Amount constitutes a reasonable percentage of the estimated damages recoverable at trial. See, e.g., Ontiveros v. Zamora, 303 F.R.D. 356, 370–71 (E.D. Cal. 2014) (approving a net settlement amount of $1.1 million out of 3 to 4 million in total potential liability in a wage-and-hour case); Bellinghausen v. Tractor Supply Co., 303 F.R.D. 611, 623–24 (N.D. Cal. 2014) (preliminarily approving a settlement amount of between 9

and 27 percent of the total potential liability in a wage-and-hour case). This factor weighs in favor of approval.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239. Here, the parties conducted formal and informal discovery, held multiple depositions, litigated a contested class certification motion and a motion for summary judgment, and held two full-day mediations. (Haffner Decl. ¶ 18.) The parties did not settle until they had briefed class certification and summary judgment motions. (Preliminary Approval Order at 8.) Because "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," Nat'l Rural Telecomms. Coop., 221 F.R.D. at 528, this factor weighs in favor of approval.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Here, Class counsel has extensive experience serving as class counsel in wage-and-hour litigation actions in federal and state court. (Haffner Decl. ¶¶ 14-16.) Class counsel believes, on balance, the settlement is "fair, reasonable, and adequate, representing a good result for the class." (MFA at 12.) As a result, the experience and views of class counsel weigh in favor of final approval.

### 7. Presence of a Governmental Participant

No governmental entity is present in this litigation. (Id. at 13.) Accordingly, this factor favors approval.

### 8. Opposition by Class Members

No class member has objected to the settlement or requested exclusion. (Haffner Decl. ¶ 17.) This high participation rate favors approval. See Churchill Vill., L.L.C. v. GE, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement with 45 objections and 500 opt-outs from class of 90,000 members, a roughly 0.6% objection rate).

//

### D. Settlement Administration Costs

The Settlement Administrator's total costs for services performed in connection with this settlement is $37,000—less than the $40,000 approved by the Settlement Agreement. (See Cofinco Decl. ¶ 25; Settlement Agreement at 21.) This amount is fair and reasonable for the administrator's efforts outlined in the Cofinco Decl. The Court **APPROVES** the $37,000 for settlement administration costs.

### E. Attorneys' Fees and Costs

#### 1. Fees

Plaintiff also seeks approval of his request for attorneys' fees. (See MAF.) Courts are obliged to ensure the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on the amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011.) "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth, 654 F.3d at 942. "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

Defendant opposes Plaintiff's request for attorneys' fees, arguing that the amount requested is "well above the 25% figure that is standard in settlement fund cases in the Ninth Circuit and this Court." (Opposition at 1.) In its Preliminary Approval Order, this Court found that the "requested attorneys' fees award is *potentially* reasonable." (Preliminary Approval Order at 10 (emphasis in original).) The Court required Plaintiff's counsel to submit points and authorities and evidence in support of the requested attorneys' fees and costs. (Id.) Plaintiff's counsel submitted points and authorities in support of its requests for attorneys' fees, supported by the Haffner Decl. and Moreno Decl. (See MAF.)

A court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). A court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation, Caudle v.

Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[1]  Under the percentage-of-the-fund method, an award of 25% of the gross settlement amount is the "benchmark" for attorneys' fees calculations.  Powers v. Eichen, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To determine whether the percentage requested is reasonable, courts may examine several factors, including:

> [T]he extent to which class counsel achieved the results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burden class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation mark omitted).  The Ninth Circuit has allowed courts to award attorneys' fees using the percentage method "in lieu of the often more time-consuming task of calculating the lodestar."  Bluetooth, 654 F.3d at 942.

Here, Class counsel seeks 33% ($400,000) of the Gross Settlement Amount.  (MAF at 3.)  Generally, courts find that a benchmark of 25% of the common fund is a reasonable fee award.  Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 258, 272 (9th Cir. 1989) (the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)) ("In applying this method, courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record.").

The Court first considers the results achieved and the risk of litigation (e.g., the number and quality of Defendant's defenses), as well as the skill required and work performed to litigate this case.  The Gross Settlement Amount is $1,200,000, with an average recovery of approximately $350.27.  (MFA at 1; Cofinco Decl. ¶ 24.)  Class counsel contends that this

---

[1] In Kerr, the Ninth Circuit adopted the 12-factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  Kerr, 526 F.2d at 70.

"extraordinary result," particularly in light of "the substantial risks of this litigation," justifies a departure from the benchmark of 25%. (MFA at 2.) As discussed above, "Defendant has factual and legal defenses which present obstacles to prevailing at trial," including a basis to challenge the certification of the Class. (MAF at 9-10.) Moreover, no Class Member has opted out of or objected to the Settlement, indicating approval of Class counsel's fee request. See In re Heritage Bond Litigation, 2005 WL 1594389, at 15* (C.D. Cal. Jun. 10, 2005) ("[T]he lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund."). Class counsel also argues that the average recovery is "significantly more" than what is typically recovered in wage-and-hour class actions—an average individual settlement for wage-and-hour actions was $253.00 in 2015. (Haffner Decl. ¶ 21.) Accordingly, the Court finds that the results achieved and risks of litigation weigh in favor of an award of 33%.

The Court further considers the contingent nature of the fee and awards made in similar cases. This case was litigated on contingency, which weighs in favor of the requested 33% award. In re National Collegiate Athletic Association Athletic Grant-in-Aid Antitrust Litigation, 2017 WL 6040065, at *3 (N.D. Cal. Dec. 6, 2017) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work.") (emphasis in original). The 33% fee is also reasonable in comparison to similar cases. See Roberts v. Marshalls of CA, LLC, 2018 WL 510286, at *16 (granting a 30% award of the total settlement amount and stating "[w]hile higher than the benchmark amount, such a percentage is not uncommon in wage and hour class action settlements such as this."). These factors, the Court finds, justify an award of 33% or $400,000 in attorneys' fees.

The Court now turns to the lodestar method to cross-check the 33% award requested. Class counsel represent their work on the case amounts to approximately $349,730. (Haffner Decl. ¶ 19.) Class Counsel have spent over 558 hours on this case at the following hourly rates: $900 for Joshua H. Haffner, $450 for Graham Lambert, and $400 for Trevor Weinberg. (See id. ¶¶ 18-19.) The rates for Mr. Haffner and Mr. Lambert were approved as reasonable in prior actions for which they appeared. (Id. ¶ 18.) These rates are reasonable in light of counsels' experience:

- Joshua H. Haffner has practiced complex civil litigation, including class actions, for approximately 24 years in California. (Id. ¶ 14.) He has acted as class counsel in 20 actions in both state and federal court, including several wage-and-hour cases involving the misclassification of truck drivers. (Id. ¶¶ 14-15.)

- Graham Lambert is an associate at Haffner Law and has been an attorney since May of 2015. (Id. ¶ 18.) He is experienced in handling civil litigation, including wage-and-hour class actions, and has been named class counsel in multiple actions. (Id.)

- Trevor Weinberg is an attorney at Haffner Law and graduated from the University of California, Davis Law School in 2019. (Id.)

See Melendez Meza v. Berryhill, 2019 WL 1751833, at *3 (C.D. Cal. Feb. 25, 2019) ("The Ninth Circuit has found reasonable fees with effective hourly rates exceeding $900, and the Central District of California has repeatedly found reasonable fees with effective hourly rates exceeding $1,000 per hour."); Prison Legal News v. Schwarzenegger, 608 F.3d 446, 455 (9th Cir. 2010) ("At another firm, partners billed an hourly rate of up to $875, and associates billed an average hourly rate of $403."). As such, the lodestar calculation of $349,730 represents an accurate lodestar rate for Class counsel's work on this case.

The requested fee ($400,000) represents a lodestar multiplier of 1.14.[2] In Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050–51 (9th Cir. 2002), the Ninth Circuit held the district court did not abuse its discretion when it approved attorneys' fees after applying the lodestar method as a cross-check of the percentage method. In that case, the attorneys' fees award represented a 3.65 lodestar multiplier, which the Ninth Circuit upheld as "appropriate." Id. at 1051. Considering the results achieved in this case, the risks involved, and the potential length of litigation, the Court finds the 1.14 multiplier to be reasonable. Accordingly, the Court **APPROVES** the requested $400,000 in attorneys' fees.

   2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class counsel requests $20,000 in costs. (MFA at 3.) The costs submitted include court reporting, travel costs, filing fees, and postage. (Haffner Decl. at 169.) All of these expenses are typically recoverable in litigation. Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement). The Court therefore **APPROVES** $20,000 for costs.

**F. Incentive Awards**

The trial court has discretion to award a monetary sum to the class representatives. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329. The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the

---

[2] Requested Fee ($400,000) / Lodestar ($349,730) = Lodestar Multiplier (1.14)

litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiff seeks a $10,000 incentive award for his service to the Class. (MAF at 11.) In the Preliminary Approval Order, the Court found that "the incentive award is *potentially* reasonable." (Preliminary Approval Order at 9 (emphasis in original).) Plaintiff argues that $10,000 is justified: he was actively involved in the litigation throughout its course, including assisting class counsel through discovery, and he has foregone any potential individual claims for the benefit of the Settlement Class as a whole. (Moreno Decl. ¶ 5-7; MAF at 11.) He also argues he took a risk by pursuing the class action because the lawsuit "may result in reputational harm," and the stigma associated with suing an employer may adversely affect future employment. (Moreno Decl. ¶ 8.) The Court is sympathetic to this potential stigma and recognizes Plaintiff's consistent involvement in the action. The Court **AWARDS** $10,000 to Plaintiff.

## V. CONCLUSION

For the reasons stated above, the Court:

1. **GRANTS** final approval of the Settlement Agreement;

2. **AWARDS** Class Counsel attorneys' fees in the amount of $400,000;

3. **AWARDS** Class Counsel costs in the amount of $20,000;

4. **AWARDS** $10,000 to Plaintiff Carlos Moreno;

5. **ORDERS** the payment of $37,000 to the Settlement Administrator; and

6. **DISMISSES** the Complaint **WITH PREJUDICE**.

The Court **ORDERS** such judgment be entered.

**IT IS SO ORDERED.**